# PAUL CONEY *v.* COMMISSIONER OF CORRECTION
## (AC 29618)

Lavine, Alvord and West, Js.

Argued September 21—officially released November 10, 2009

*Mark Diamond,* special public defender, for the appellant (petitioner).

*Jo Anne Sulik,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Terence D. Mariani,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Paul Coney,[1] appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims that the court improperly (1) denied his petition for certification to appeal and (2) denied his petition for a writ of habeas corpus that was based on his claim of ineffective assistance of counsel. We dismiss the petitioner's appeal.

The relevant facts and procedural history are set forth in the decision of our Supreme Court disposing of the petitioner's direct appeal. "On August 20, 1999, the [petitioner] met an acquaintance, Terence Conyers, at a bar in Waterbury. Also present at the bar that evening was the victim, Shawn Howard. At some point during the night, while the [petitioner] and the victim were seated in close proximity to one another, the victim accused the [petitioner] of being one of a group of individuals who had assaulted him approximately five months earlier. The [petitioner] denied such involvement, and a verbal altercation ensued. The [petitioner] and the victim then agreed to settle their differences by fighting outside the bar.

"As the [petitioner] and the victim exited the bar through the back door, a number of other persons followed, ostensibly to watch the fight. Before the fight

---

[1] The record reflects that the petitioner also is known as Stephen Coney. See *State* v. *Coney,* 266 Conn. 787, 835 A.2d 977 (2003).

began however, the [petitioner] removed a loaded revolver that he had secreted on his person and began waving the weapon. At the time the [petitioner's] gun was brandished, the distance between the [petitioner] and the victim was approximately eight to ten feet.

"Upon seeing the weapon, the group that had gathered to observe the fight scattered. As a result of this hurried mass exodus, no one witnessed the subsequent interaction between the [petitioner] and the victim. Shortly thereafter, the [petitioner] shot the victim once in the left chest area and twice in the lower right abdomen area." *State* v. *Coney*, 266 Conn. 787, 791–92, 835 A.2d 977 (2003). The victim died from his injuries. Id., 792.

The petitioner was arrested and charged with murder in violation of General Statutes § 53a-54a (a) and criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (a). At the jury trial, "the [petitioner's] testimony as to the sequence of events essentially mirrored the state's presentation in all material respects. The one significant divergence regarded the [petitioner's] testimony about what had occurred after he had brandished his weapon. The [petitioner] testified that, after he had exhibited the weapon, the victim attempted to strip the gun from him. The [petitioner] further testified that he and the victim began to struggle for control of the weapon, and the gun 'went off' three times. After the first two shots had been fired, the victim continued to wrestle for the weapon but, following the third discharge, the victim fell to the ground.

"On cross-examination, the [petitioner] estimated the distance between the victim and the weapon at the time the three shots were fired. In the [petitioner's] words, the two individuals were struggling over the weapon and 'twirling around'; the two 'were right on each other

basically'; and the weapon was within inches of the victim, if not in direct contact with him, at the time it discharged." *State* v. *Coney*, supra, 266 Conn. 792–93.

On rebuttal, the state called Robert K. O'Brien, a criminalist from the state police forensic laboratory. O'Brien, at the request of defense counsel Dennis Harrigan, had analyzed the weapon and the victim's clothing to determine the approximate distance from the muzzle of the gun to the clothing at the time the three gunshots were fired.[2] O'Brien's report, which Harrigan had received and reviewed prior to trial, indicated that the hole in the chest area of the target material was of a contact type of origin. With respect to the two gunshots to the lower abdomen area, however, the report did not specify exact distances. After Harrigan spoke with O'Brien about the report at the time he received it, Harrigan concluded that O'Brien was unable to reach an opinion as to the distances involved in the discharges creating the two holes in the abdomen area. For that reason, Harrigan was surprised when O'Brien testified on rebuttal that the two holes in the lower abdomen area of the target material were caused by a firing from a distance of four feet or more. Id., 793–95.

Harrigan immediately requested a continuance to contact Peter DeForest, a forensic consultant, to discuss O'Brien's opinions and to determine if DeForest could be used as a surrebuttal witness. The court granted the motion for a continuance until the following morning. The following morning, Harrigan requested additional time to provide an offer of proof. The court reluctantly agreed. The next morning, which was a Friday, Harrigan indicated that DeForest needed the weekend to perform his own testing and that, if he was able

[2] "Distance determination testing is a scientific process by which, through analyzing a weapon that has been involved in a shooting and the 'target' material, such as clothing, struck by the bullet, an approximation may be made as to the distance between the muzzle of the weapon and the target material at the time of discharge." *State* v. *Coney*, supra, 266 Conn. 793 n.7.

to form an opinion, DeForest would be available to testify in surrebuttal the following Monday. The court denied the defense motion for a continuance, noting that Harrigan's cross-examination of O'Brien had been thorough, thereby ameliorating any possible harm occasioned by the failure to present a defense expert witness to refute O'Brien's testimony. Id., 795–97. The jury returned its verdict finding the petitioner guilty of both charges.

On direct appeal, the petitioner claimed that the trial court's denial of his motion for a continuance to procure an expert surrebuttal witness deprived him of his due process right to a fair trial as protected by the federal constitution. Our Supreme Court rejected that claim because the petitioner had not sufficiently demonstrated any prejudice flowing from the denial of the motion. "The record reveals that nothing in the [petitioner's] proffer in connection with DeForest indicated that DeForest had an opinion inconsistent with that of O'Brien, or that, if given the opportunity to conduct an independent examination, DeForest would have arrived at conclusions different than those of O'Brien." Id., 803. The Supreme Court affirmed the judgment of conviction.

Following his unsuccessful appeal, the petitioner filed an amended petition for a writ of habeas corpus, in which he alleged that Harrigan rendered ineffective assistance of counsel by failing to call a ballistics expert witness to testify on his behalf at the criminal trial. At the habeas trial, the court heard testimony from Harrigan, O'Brien and DeForest. The court, by memorandum of decision filed January 7, 2008, denied the habeas petition on the ground that the petitioner had failed to prove that Harrigan's performance was deficient or that he had suffered any prejudice from Harrigan's failure to call DeForest to testify at the criminal trial. The court denied the petition for certification to

appeal from the judgment denying the habeas petition. This appeal followed.

We first consider the petitioner's claim that the habeas court improperly denied his petition for certification to appeal. The standard of review is well settled. "We examine the petitioner's underlying claim . . . to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. . . . In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." (Internal quotation marks omitted.) *McClam* v. *Commissioner of Correction*, 98 Conn. App. 432, 435–36, 909 A.2d 72 (2006), cert. denied, 281 Conn. 907, 916 A.2d 49 (2007). "A reviewing court need not address both components of the inquiry if the [petitioner] makes an insufficient showing on one." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 89 Conn. App. 134, 139, 871 A.2d 1103, cert. denied, 275 Conn. 909, 882 A.2d 676 (2005).

With this standard in mind, we conclude that the habeas court correctly determined that the petitioner

failed to demonstrate that his defense was prejudiced by Harrigan's failure to call a ballistics expert to testify on his behalf at the criminal trial. Accordingly, the court did not abuse its discretion in denying the petition for certification to appeal.

To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 458, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006). In its memorandum of decision, the habeas court made the following findings that were supported by the evidence presented at trial. "DeForest did not propose flatly to contradict O'Brien. Rather, the ultimate of [the] opinion of DeForest was that there was insufficient information to reach a conclusion about the distance from which the petitioner fired the two [gun]shots in question. This point was the same as the thrust of Harrigan's cross-examination of O'Brien, which culminated with the admission that distance determination is not an 'exact science.' "

The court also noted that there was ample additional evidence that contradicted the petitioner's claim that the shooting was accidental. Although the petitioner testified that the gun accidentally fired, the jury was made aware of the fact that the petitioner had been convicted of seven prior felonies. The petitioner was the only individual with a gun, a revolver, which the jury may have reasoned would be unlikely to fire three times by accident during a struggle. The court also noted that the petitioner fled from the scene, lied to his girlfriend about the incident, threw the revolver into a pond, disposed of his bloodstained pants and lied to the police at the time of his arrest. On the basis of those findings, the habeas court concluded that it was highly

unlikely that the testimony of DeForest would have made any difference in the outcome of the criminal trial.

Upon our examination of the record and briefs, as well as the court's resolution of the issues presented in the habeas petition, we are not persuaded that the court abused its discretion in denying the petition for certification to appeal. The petitioner has not demonstrated that the issues presented are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions are adequate to deserve encouragement to proceed further. See *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991); *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994).

The appeal is dismissed.

In this opinion the other judges concurred.