ANTHONY SINCHAK *v.* COMMISSIONER
OF CORRECTION
(AC 29068)

Bishop, Robinson and Hennessy, Js.

Argued October 13, 2010—officially released February 22, 2011

*J. Patten Brown III,* for the appellant (petitioner).

*Harry Weller,* senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky,* state's attorney, and *Eva B. Lenczewski,* supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

HENNESSY, J. The petitioner, Anthony Sinchak, appeals following the denial of his petition for certification to appeal from the judgments of the habeas court denying his consolidated petitions for a writ of habeas corpus. The petitioner claims that the court (1) abused its discretion in denying his petition for certification to appeal from the judgments rejecting his claim that his trial counsel rendered ineffective assistance and (2) failed to conduct a sufficient inquiry into his allegation that a conflict of interest existed between him and his habeas counsel. We dismiss the appeal.

The following facts and procedural history are relevant to the resolution of the petitioner's appeal. The jury found the petitioner guilty of one count of murder in violation of General Statutes § 53a-54a and two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B). Thereafter, the trial court sentenced the petitioner to a total effective term of ninety-six years incarceration. His conviction was upheld on direct appeal. See *State* v. *Sinchak*, 47 Conn. App. 134, 703 A.2d 790 (1997), appeal dismissed, 247 Conn. 440, 721 A.2d 1193 (1999).

On July 26, 2000, and July 3, 2001, the petitioner filed two separate pro se petitions for a writ of habeas corpus, which the habeas court consolidated for trial. By way of his consolidated habeas petitions, the petitioner alleged that he had been deprived of the right to the effective assistance of trial counsel because counsel (1) failed to file a motion to discover certain exculpatory statements prior to the hearing in probable cause, (2) failed to conduct an adequate pretrial investigation, (3) failed to hire a forensics expert, (4) failed to move for a mistrial or dismissal, (5) failed to confront certain witnesses with conflicting testimony, (6) failed to file timely a motion for a new trial, (7) failed to speak on his behalf at sentencing and (8) was intoxicated during portions of the trial.

On June 29, 2007, the habeas court issued a memorandum of decision denying the consolidated habeas petitions. The court concluded that the "petitioner . . . [had] neither affirmatively shown deficient performance nor the prejudice arising therefrom. Even assuming deficient performance by [trial counsel], which [the] petitioner has not shown, [the] petitioner has presented no evidence that such deficient performance resulted in prejudice." The petitioner then sought certification to appeal, which the court denied. This appeal followed.

Additional relevant facts and procedural history will be set forth as necessary.

We begin by setting forth the standard of review and the general legal principles applicable to the petitioner's appeal. "In a habeas appeal, although this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Synakorn* v. *Commissioner of Correction*, 124 Conn. App. 768, 771, 6 A.3d 819 (2010).

I

The petitioner's first claim on appeal is that the habeas court abused its discretion in denying his petition for certification to appeal from the judgments denying his consolidated petitions for a writ of habeas corpus. We are not persuaded.

The following additional relevant facts and procedural history are set forth in our decision on the petitioner's direct appeal. "The charges [in the underlying criminal case] stem from an incident that occurred on July 27, 1992, at the Freight Street Social Club, an illegal after-hours social club. At the time, Kathleen Gianni worked as a bartender at the social club, which was jointly owned by her close friend, Jo Orlandi, and by Dennis O'Connor. Dennis O'Connor was the president of the Helter Skelter Motorcycle Club, of which the [petitioner] was also a member. Dennis O'Connor's brother, Terrence O'Connor, also a motorcycle club member, worked as a doorman at the social club.

"On July 26, 1992, the motorcycle club held a barbecue fund-raiser to raise bail money for some incarcerated bikers. Both Orlandi and the [petitioner] attended the barbecue. The [petitioner] was accompanied by his girlfriend, Laura Ryan. At approximately 1 a.m. on July 27, 1992, Orlandi, Gianni and another friend opened the social club for business. A number of people visited the club that morning, including the [petitioner], Ryan, Terrence O'Connor and several other motorcycle club members. Also at the club that morning were Michael Lambo and James Palomba.

"The [petitioner] and Ryan remained in the back office when Orlandi began to lock the front doors of the club. The [petitioner] walked out from the back office and fired a shot at Gianni, who was standing behind the far end of the bar. The [petitioner] threatened Orlandi and Ryan with the gun, stating that he could not allow any witnesses to the shooting and then fired several more shots at Gianni who lay on the floor behind the bar moaning and gasping. After the [petitioner] fired the final, fatal shot, he grabbed Orlandi and Ryan, placed the gun to their heads and announced that the three of them were going to leave the club and

stay together until the whole incident was straightened out.

"The three then went from the club to the Torrington residence of Lisa Fruin, the mother of the [petitioner's] infant son. Once at Fruin's residence, the [petitioner] disassembled the gun and ordered Fruin to dispose of the gun parts in a nearby dumpster. The [petitioner] disposed of the clothes that he had been wearing when he shot Gianni. The [petitioner] forced Ryan and Orlandi to remain with him and tied a bell to Orlandi's ankle while she slept so that he could hear if she attempted to escape.

"Around noon the next day, the [petitioner] allowed Orlandi to leave, but ordered Ryan to stay with her for at least twenty-four hours. Orlandi returned home with Ryan and they remained there until approximately 4 p.m. the next day. At that time, Ryan left Orlandi's home . . . ." *State* v. *Sinchak,* supra, 47 Conn. App. 136–37.

In the days following the shooting, the Waterbury police interviewed and took written statements from Orlandi, Ryan, Lambo and Palomba. On August 3, 1992, the police filed a warrant application and an affidavit, which contained a summary of these statements. The petitioner's trial counsel, attorney Michael Graham, received a copy of these materials on September 15, 1992, eight days before the hearing in probable cause. The state, however, did not disclose the written statements to Graham at that time.

"After the state had rested and during the [petitioner's] case, the state revealed to the [petitioner] that the Waterbury police had taken written statements from Lambo and Palomba. The court ordered the immediate disclosure of the statements. The [petitioner] claimed that the statements contained exculpatory evidence because, taken together, the statements contradicted the testimony of the state's eyewitnesses by implicating

Terrence O'Connor as the shooter. After reviewing the materials, the court held that the statements, taken together, contained exculpatory evidence and should have been disclosed to the [petitioner]." Id., 140.

We begin by setting forth the relevant principles of law. "We have noted that [t]he sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to [the] effective assistance of counsel." (Internal quotation marks omitted.) *Abrams* v. *Commissioner of Correction*, 119 Conn. App. 414, 418, 987 A.2d 371, cert. denied, 295 Conn. 920, 991 A.2d 564 (2010). "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied. . . . It is well settled that [a] reviewing court can find against a petitioner on *either* ground, whichever is easier." (Emphasis in original; internal quotation marks omitted.) *Synakorn* v. *Commissioner of Correction*, supra, 124 Conn. App. 772.

The petitioner first claims that Graham's failure to file a motion to discover the full text of the exculpatory statements of Lambo and Palomba deprived the petitioner of the right to the effective assistance of counsel

during the hearing in probable cause. The habeas court found that while Graham had not received the full text of the exculpatory statements prior to the hearing in probable cause, he had received a summary of the exculpatory evidence contained therein by way of the affidavit offered in support of the August 3, 1992 warrant application. The court determined, therefore, that the petitioner had failed to prove that Graham rendered ineffective assistance by failing to file a motion to discover the exculpatory statements prior to the hearing in probable cause. Even if we assume, arguendo, that Graham's failure to file a motion to discover the full text of the exculpatory statements prior to the hearing in probable cause fails to satisfy the performance prong of *Strickland*, the petitioner failed to prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. We conclude, therefore, that the petitioner failed to show prejudice and agree with the court that this claim must fail.

The petitioner next claims that Graham rendered ineffective assistance by failing to conduct an adequate pretrial investigation. Specifically, the petitioner claims that Graham failed to speak to potential witnesses and pursue leads contained within the full text of the exculpatory statements of Lambo and Palomba. The petitioner testified, however, that Graham hired several investigators, that he provided at least one of those investigators with the names of potential witnesses and information regarding potential leads, and that the investigators attempted to interview several of the potential witnesses. Even if we were to assume, without deciding, that Graham's failure to interview potential witnesses and pursue leads fails to satisfy the performance prong of *Strickland*, the petitioner failed to present any evidence showing what information the

potential witnesses would have provided and what evidence additional investigation would have yielded. It is well established that "[m]ere conjecture and speculation are not enough to support a showing of prejudice." (Internal quotation marks omitted.) *Toles* v. *Commissioner of Correction*, 113 Conn. App. 717, 724, 967 A.2d 576, cert. denied, 293 Conn. 906, 978 A.2d 1114 (2009). Because the petitioner failed to prove what information the potential witnesses would have provided or what evidence further investigation would have revealed, we agree with the court that the petitioner failed to show prejudice and that his claim must fail.

The petitioner next claims that Graham rendered ineffective assistance by failing to hire a forensics expert. Our review of the record reveals that the sole evidence on point, the petitioner's testimony, contradicts the petitioner's claim. At the habeas trial, the petitioner testified that Graham had informed him that he had hired a forensics expert and that that expert had reviewed the available evidence. The court found, on the basis of the foregoing evidence, that the petitioner had failed to prove that Graham failed to hire a forensics expert. The petitioner also failed to present any evidence in order to demonstrate what information additional investigation by a forensics expert would have revealed. Thus, even if we were to assume, without deciding, that Graham's failure to hire a forensics expert fails to satisfy the performance prong of *Strickland*, the petitioner failed to introduce any evidence to show that he suffered prejudice as a result of that deficient performance. See *Coney* v. *Commissioner of Correction*, 117 Conn. App. 860, 865–66, 982 A.2d 220 (2009), cert. denied, 294 Conn. 924, 985 A.2d 1061 (2010). Because we conclude that the petitioner failed to show deficient performance on Graham's part or prejudice resulting therefrom, we agree with the court that the petitioner's claim must fail.

The petitioner next claims that Graham rendered ineffective assistance by failing to file a motion for a mistrial and a motion to dismiss due to the state's untimely disclosure of the complete written statements of Lambo and Palomba. "While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 68, 967 A.2d 41 (2009). In order to show prejudice, the petitioner must prove that if Graham had filed a motion for a mistrial or a motion to dismiss, there would have been a reasonable probability that the motions would have been granted. See *Correa* v. *Commissioner of Correction*, 101 Conn. App. 554, 556, 922 A.2d 289, cert. denied, 283 Conn. 911, 928 A.2d 536 (2007). In the present case, the habeas court found that a mistrial would not have been granted because a less extreme remedy existed, namely, granting the petitioner a continuance in order to allow him to interview Lambo and Palomba. The court concluded, therefore, that the petitioner had failed to prove that Graham's performance was deficient or that he was prejudiced by Graham's alleged failures. After carefully reviewing the record and briefs, we agree with the court's decision that the petitioner was not deprived of the effective assistance of trial counsel due to Graham's failure to move for a mistrial or dismissal.

The petitioner next claims that Graham rendered ineffective assistance by failing to recall Orlandi and Ryan in order to confront them with conflicting testimony offered by Lambo and Palomba. The habeas court found

that Graham's decision not to recall Orlandi and Ryan to the witness stand was a matter of trial strategy. It is well established that "[a] reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance and that a tactic that appears ineffective in hindsight may have been sound trial strategy at the time." (Internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 120 Conn. App. 412, 417, 991 A.2d 705, cert. denied, 297 Conn. 915, 996 A.2d 279 (2010). As the court noted, Orlandi and Ryan were not mere witnesses, they were victims. By recalling Orlandi and Ryan to the witness stand, Graham might well have engendered greater sympathy for them and greater antipathy for the petitioner. Because we conclude, therefore, that the petitioner failed to show deficient performance on Graham's part or prejudice resulting therefrom, we agree with the court that the petitioner's claim must fail.

The petitioner next claims that Graham rendered ineffective assistance by failing to file timely a motion for a new trial. The habeas court found that, at the close of the petitioner's criminal trial, the trial court instructed Graham to submit posttrial motions by May 12, 1995. On July 20, 1995, Graham filed a motion for a new trial, which the court dismissed as untimely. In dismissing the petitioner's motion, the trial court noted that the claims set forth in the motion were not, in any event, proper grounds for a new trial. The habeas court found, therefore, that the petitioner had failed to prove prejudice under the *Strickland* standard. "To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Synakorn* v. *Commissioner of Correction*, supra, 124 Conn. App. 772. Thus, in this case, the petitioner

must prove that if Graham had timely filed the motion for a new trial, there would have been a reasonable probability that the motion would have been granted. See *Correa* v. *Commissioner of Correction*, supra, 101 Conn. App. 556. Because we conclude that the petitioner failed to prove that Graham's performance in untimely filing the motion for a new trial caused him to suffer any prejudice, we agree with the court that the petitioner's claim must fail.

The petitioner next claims that Graham rendered ineffective assistance because he failed to speak on the petitioner's behalf during sentencing. Because the petitioner failed to prove what additional facts, arguments or evidence Graham could have introduced that would have altered the terms of his sentence, we agree with the court that the petitioner failed to satisfy the prejudice prong of the *Strickland* standard. See *Corona* v. *Commissioner of Correction*, 123 Conn. App. 347, 353–54, 1 A.3d 1226, cert. denied, 299 Conn. 901, 10 A.3d 519 (2010).

The petitioner next claims that Graham rendered ineffective assistance because he was intoxicated during portions of the criminal trial. Aside from the petitioner's testimony, however, the petitioner failed to adduce any evidence in support of his claim. The habeas court found that Graham was lucid throughout the criminal trial and that his arguments were always logical and appropriate. Because the petitioner failed to prove that Graham was intoxicated during the criminal trial, we agree with the court that this ineffective assistance of counsel claim must fail.

Therefore, upon our examination of the record and the court's resolution of the issues presented in the consolidated habeas petitions, we are not persuaded that the court abused its discretion by denying the petition for certification to appeal. The petitioner has not

demonstrated that the issues presented are debatable among jurists of reason, that a court could resolve the issues differently or that the questions presented warrant encouragement to proceed further. See *Simms* v. *Warden*, supra, 230 Conn. 616.

## II

The petitioner's next claim on appeal is that the habeas court failed to explore adequately his allegation that a conflict of interest existed between him and his habeas counsel. The respondent, the commissioner of correction, contends that the court's inquiry was more than sufficient because the true source of the petitioner's allegation is not a conflict of interest but a disagreement over trial tactics and strategy. We agree with the respondent.

The record reveals the following additional relevant facts and procedural history. During the habeas trial, the petitioner informed the court that he wanted to remove attorney Donald O'Brien as his counsel and to have new counsel appointed. The petitioner alleged that O'Brien failed to investigate his claim that his trial counsel had failed to review certain forensics evidence and failed to amend the consolidated habeas petitions to include a claim that trial counsel had failed to request a jury instruction pursuant to *State* v. *Patterson*, 276 Conn. 452, 886 A.2d 777 (2005). O'Brien responded that he had thoroughly investigated the petitioner's claims and that he had acted in the petitioner's best interest. Thereafter, the court informed the petitioner that it would not appoint new counsel, and the petitioner agreed to allow O'Brien to continue to serve as his attorney.

We begin by setting forth the relevant legal principles. It is well established that "[a] petitioner in a habeas proceeding has both the right to effective assistance of habeas counsel and the right to be represented by

habeas counsel who is free from conflicts of interest. . . . [I]n order to safeguard a habeas petitioner's right to the effective assistance of habeas counsel, a habeas court, like a criminal trial court, has an affirmative obligation to explore the possibility that habeas counsel has a conflict of interest when that possibility is brought to the attention of the habeas court in a timely manner. In discharging that duty, the habeas court must be able, and be freely permitted, to rely on habeas counsel's representation that the possibility of such a conflict does or does not exist. The court may rely on the solemn representation of a fact made by habeas counsel as an officer of the court. The course thereafter followed by the court in its inquiry depends on the circumstances of the particular case." (Internal quotation marks omitted.) *Abrams* v. *Commissioner of Correction*, supra, 119 Conn. App. 418–19.

Although the petitioner alleges that his relationship with his attorney was afflicted by a conflict of interest, his allegation does not fit into the traditional legal concept of a conflict of interest wherein the attorney has an interest that is at odds with his client's interest. In the present case, the petitioner has not alleged a conflict of interest but, rather, a disagreement with counsel over legal tactics and strategy. See, e.g., id., 419.

Our review of the record reveals that the court thoroughly investigated the alleged conflict of interest. The court allowed the petitioner to voice his concerns and then addressed those concerns to his attorney. The court then determined, on the basis of the representations made to it, that no conflict of interest existed. Because we have determined that the court properly investigated the petitioner's allegation and determined that no conflict of interest existed, we conclude that it was unnecessary for the court to have inquired further.

The appeal is dismissed.

In this opinion the other judges concurred.