STATE OF CONNECTICUT *v.* ANTHONY SINCHAK
(AC 16557)

O'Connell, C. J., and Spear and Dupont, Js.

Argued September 24—officially released November 11, 1997

*Pamela S. Nagy*, special assistant public defender, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Eva Lenczewski*, assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. In this action, the defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of one count of murder in violation of General Statutes § 53a-54a and two counts of first degree kidnapping in violation of General Statutes § 53a-92 (a) (2) (B). The defendant claims that (1) the evidence was insufficient to sustain his conviction of kidnapping in

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023 and General Statutes § 51-199 (c), the Supreme Court transferred the appeal to this court.

the first degree, (2) his state and federal constitutional rights to a fair probable cause hearing and to a fair trial were violated by the state's failure to disclose certain allegedly exculpatory evidence until after the state had rested its case-in-chief, (3) the trial court improperly failed to give the jury his requested instruction regarding the motivation of the state's eyewitnesses, (4) the trial court improperly admitted into evidence certain color slides of the victim's autopsy, and (5) the misconduct of the state's attorney throughout the trial deprived him of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The charges stem from an incident that occurred on July 27, 1992, at the Freight Street Social Club, an illegal after-hours social club. At the time, Kathleen Gianni worked as a bartender at the social club, which was jointly owned by her close friend, Jo Orlandi, and by Dennis O'Connor. Dennis O'Connor was the president of the Helter Skelter Motorcycle Club, of which the defendant was also a member. Dennis O'Connor's brother, Terrence O'Connor, also a motorcycle club member, worked as a doorman at the social club.

On July 26, 1992, the motorcycle club held a barbecue fund-raiser to raise bail money for some incarcerated bikers. Both Orlandi and the defendant attended the barbecue. The defendant was accompanied by his girlfriend, Laura Ryan. At approximately 1 a.m. on July 27, 1992, Orlandi, Gianni and another friend opened the social club for business. A number of people visited the club that morning, including the defendant, Ryan, Terrence O'Connor and several other motorcycle club members. Also at the club that morning were Michael Lambo and James Palomba.

The defendant and Ryan remained in the back office when Orlandi began to lock the front doors of the club.

The defendant walked out from the back office and fired a shot at Gianni, who was standing behind the far end of the bar. The defendant threatened Orlandi and Ryan with the gun, stating that he could not allow any witnesses to the shooting and then fired several more shots at Gianni who lay on the floor behind the bar moaning and gasping. After the defendant fired the final, fatal shot, he grabbed Orlandi and Ryan, placed the gun to their heads and announced that the three of them were going to leave the club and stay together until the whole incident was straightened out.

The three then went from the club to the Torrington residence of Lisa Fruin, the mother of the defendant's infant son. Once at Fruin's residence, the defendant disassembled the gun and ordered Fruin to dispose of the gun parts in a nearby dumpster. The defendant disposed of the clothes that he had been wearing when he shot Gianni. The defendant forced Ryan and Orlandi to remain with him and tied a bell to Orlandi's ankle while she slept so that he could hear if she attempted to escape.

Around noon the next day, the defendant allowed Orlandi to leave, but ordered Ryan to stay with her for at least twenty-four hours. Orlandi returned home with Ryan and they remained there until approximately 4 p.m. the next day. At that time, Ryan left Orlandi's home with Dave Martorelli, another motorcycle club member. That night, the defendant and Martorelli disposed of Gianni's body and attempted to burn down the club.

For the next several days, Orlandi denied any knowledge of Gianni's disappearance. On July 29, 1992, Orlandi opened the club at the request of the police, where evidence of the attempted arson and signs of the violence were discovered. The next day, Orlandi fled to Long Island, but ultimately returned to Connecticut

and gave several statements to the police detailing the murder.

The defendant's first claim is that the state failed to prove beyond a reasonable doubt that the defendant had the requisite intent for a conviction of first degree kidnapping. Our appellate courts have developed a two part standard of review of an insufficiency of evidence claim. First, the court must construe the evidence in the light most favorable to sustaining the facts found by the trier. *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993); *State* v. *Scales*, 38 Conn. App. 225, 228, 660 A.2d 860 (1995). Second, the court must determine whether, on the established facts and all reasonable inferences drawn therefrom, the trial court could have reasonably concluded that the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Rasmussen*, 225 Conn. 55, 73–74, 621 A.2d 728 (1993); *State* v. *Pinnock*, 220 Conn. 765, 770, 601 A.2d 521 (1992).

A person is guilty of first degree kidnapping if he "abducts another person and . . . restrains the person abducted with intent to . . . accomplish or advance the commission of a felony . . . ." General Statutes § 53a-92 (a) (2) (B). The defendant claims that the evidence was insufficient to support a finding of intent to accomplish or to advance the commission of a felony because the underlying felony, murder, was accomplished before any abduction occurred. Contrary to the assertions of the defendant, however, kidnapping is a continuing crime that commences once a person is wrongfully deprived of freedom and continues as long as the unlawful detention lasts. *State* v. *Gomez*, 225 Conn. 347, 351, 622 A.2d 1014 (1993); *State* v. *Smith*, 198 Conn. 147, 155, 502 A.2d 874 (1985). Persons are "abducted" within the meaning of § 53a-92 when they are restrained with the intent to prevent their liberation, either (1) by secreting or holding them in a place they

are not likely to be discovered, or (2) by using or threatening to use physical force or intimidation. General Statutes § 53a-91 (2). Persons are "restrained" when their movements are intentionally restricted so as substantially to interfere with their liberty, either (1) by moving them from one place to another, or (2) by confining them either to the place where the restriction commences or to the place where they have been moved without their consent. General Statutes § 53a-91 (1).

Applying these principles of law to the facts of this case, we conclude that the jury reasonably could have found that the defendant abducted Orlandi and Ryan within the meaning of the kidnapping statute before the three individuals left the club and before the murder was completed. Here, the evidence demonstrated that prior to the final fatal shot, the defendant restrained Orlandi at various times by placing a gun to her head and stating that he would allow no witnesses to the crime. This constituted the use of physical force as well as the use of threats and intimidation to prevent Orlandi from aiding the victim, preventing the final fatal shot, or escaping herself. The defendant engaged in similar threatening acts with Ryan to achieve the same result. By these acts, the defendant accomplished or advanced the murder of Gianni. The evidence further demonstrated that Gianni was still alive and moaning after the restraint of Orlandi and Ryan began. Accordingly, the jury reasonably could have found that the defendant accomplished the kidnapping of Orlandi and Ryan with the intent to advance or accomplish the murder of Gianni. In review of the sufficiency of the evidence to support the jury's finding of intent, we hold, therefore, that the state has met its evidentiary burden.

The defendant next claims that he is entitled to a new probable cause hearing because the state's failure to disclose statements given to the police by Lambo and Palomba, who were at the social club on July 27,

1992, deprived him of due process of law and of a fair and valid probable cause hearing. The defendant further asserts that the state's nondisclosure deprived him of his right to a fair trial. After the state had rested and during the defendant's case, the state revealed to the defendant that the Waterbury police had taken written statements from Lambo and Palomba. The court ordered the immediate disclosure of the statements. The defendant claimed that the statements contained exculpatory evidence because, taken together, the statements contradicted the testimony of the state's eyewitnesses by implicating Terrence O'Connor as the shooter. After reviewing the materials, the court held that the statements, taken together, contained exculpatory evidence and should have been disclosed to the defense.

It is well established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The constitutional obligation to disclose exculpatory evidence attaches at the time of the probable cause hearing. *State* v. *Sherman*, 38 Conn. App. 371, 378, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995). In order to establish a *Brady* violation due to nondisclosure of exculpatory materials at a probable cause hearing, the defendant must demonstrate that (1) the prosecution "suppressed" evidence, (2) the evidence was "favorable" to the defense, and (3) the evidence was "material." *State* v. *Gant*, 231 Conn. 43, 52, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995); *State* v. *Shannon*, 212 Conn. 387, 398, 406, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989); *Demers* v. *State*, 209 Conn. 143, 150, 547 A.2d 28 (1988); *State*

v. *Milner*, 206 Conn. 512, 539–40, 539 A.2d 80 (1988). If, after applying this analysis, the court concludes that the state did suppress evidence in violation of *Brady* at the probable cause hearing, the court must then determine whether "the nondisclosure did in fact taint the defendant's subsequent prosecution and deprived the defendant of his constitutional right to a fair trial." (Internal quotation marks omitted.) *State* v. *Sherman*, supra, 379; see also *State* v. *McPhail*, 213 Conn. 161, 166–67, 567 A.2d 812 (1989). The defendant will be entitled to a new probable cause hearing only if the violation of the defendant's due process rights at the probable cause hearing denied the defendant the right to a fair trial subsequently held. See *State* v. *McPhail*, supra, 166–67.[2]

Given the law of *McPhail*, this court need not analyze whether the state's nondisclosure at the probable cause hearing violated *Brady*. Even assuming, arguendo, that the state did improperly suppress exculpatory evidence at the probable cause hearing, we nonetheless conclude that the nondisclosure did not taint the subsequent prosecution and deprive the defendant of a fair trial. "[E]vidence known to the defendant or his counsel, or that is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady*." (Internal quotation marks omitted.) *State* v. *Rasmussen*, supra, 225 Conn. 91, quoting *State* v. *Walker*, 214 Conn. 122, 126, 571 A.2d 686 (1990).

Here, the statements of Lambo and Palomba were disclosed to the defendant during trial. The defendant, therefore, can complain of the timing of the disclosure but has no basis for a claim of suppression. *State* v. *Reddick*, 197 Conn. 115, 121, 496 A.2d 466 (1985), cert.

---

[2] Regarding the defendant's request that this court overrule *McPhail*, it is axiomatic that this court lacks the authority to overrule Supreme Court precedent.

denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). When exculpatory evidence is disclosed for the first time at trial, "the appropriate standard to be applied is whether the disclosure came so late as to prevent the defendant from receiving a fair trial." (Internal quotation marks omitted.) *State* v. *Walker*, supra, 214 Conn. 127. In *Walker*, the disclosure of the exculpatory material came during the state's rebuttal, after both the state and the defense had rested. The court determined, however, that despite the late disclosure, the defendant failed to substantiate his claims of prejudice. Id., 128.

No denial of due process occurs if the exculpatory material is disclosed " 'in time for its effective use at trial.' " *State* v. *Pollitt*, 199 Conn. 399, 414, 508 A.2d 1 (1986). Under these circumstances, the defendant bears the burden of proving that he was prejudiced by the state's late disclosure. *State* v. *Walker*, supra, 214 Conn. 126–27. Here, the defendant has failed to meet his burden. Both Lambo and Palomba testified at trial for the defense regarding the content of their prior statements to the Waterbury police. The defendant had every opportunity to draw attention to any inconsistencies between the statements of Lambo and Palomba and the testimony of the state's key witnesses. Furthermore, if the defendant wanted to use the statements to impeach the state's witnesses, he could have moved to recall the witnesses or requested a continuance to conduct further investigation and preparation.[3] See *State* v. *Altrui*, 188 Conn. 161, 177–78, 448 A.2d 837 (1982). The defendant did neither of those two things. We conclude that the defendant has failed to demonstrate resulting prejudice due to the state's failure to disclose the statements at an earlier time and, accordingly, the state's

---

[3] Upon close examination of the statements of Lambo and Palomba, we conclude that the statements would have had very limited impeachment value.

late disclosure cannot furnish a basis for the reversal of his conviction.

The defendant next claims that the trial court improperly declined to instruct the jury regarding the purported motivation of the state's key witnesses to testify falsely against him. The defendant requested that the court instruct the jury regarding the motivation of the state's witnesses, Orlandi, Ryan and Fruin. The trial court did not deliver the requested instruction but instead delivered a standard instruction regarding the assessment of witness credibility in general, including the possible bias or motive to testify falsely.[4]

" 'It is the law of this state that a request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . It is, however, also the law of this state that a refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance.' " *State* v. *Cooper*, 182 Conn. 207, 211, 438 A.2d 418 (1980), quoting *Mazzucco* v. *Krall Coal & Oil Co.*, 172 Conn. 355, 357, 374 A.2d 1047 (1977). A criminal defendant is not entitled to an instruction singling out any witness who testifies for the state regarding that witness' possible motivation for testifying falsely. *State* v. *Cooper*, supra, 212 n.5.

To be entitled to an instruction regarding a specific witness' possible motive, the defendant must show that the witness is a complaining witness who could himself be subject to prosecution depending on the veracity of his testimony, and that there was evidence to support the assertion that the witness was the culpable party.

---

[4] The trial court instructed the jury that when weighing the testimony of a witness, "[y]ou should consider any possible bias or prejudice the witness may have, whether for or against the state or for or against the defendant; the witness' interest or lack of interest of whatever sort in the outcome of the trial . . . ."

Id.; *State* v. *Byrd*, 34 Conn. App. 368, 372, 641 A.2d 818 (1994), aff'd in part, 233 Conn. 517, 659 A.2d 1201 (1995), aff'd, 239 Conn. 405, 685 A.2d 669 (1996); *State* v. *Smith*, 16 Conn. App. 223, 229, 547 A.2d 102 (1988).

While Orlandi, Ryan and Fruin were all witnesses for the state in the present case, none of them was a complaining witness for the purposes of the murder of Gianni.[5] Further, while Orlandi and Ryan may be considered complaining witnesses with respect to the kidnapping, the evidence introduced at trial was clearly insufficient to support the assertion that any one of the three women was a culpable party to the murder or the kidnapping. To be sufficient to implicate culpability, the evidence must directly connect a complaining witness to the crime with which the defendant is charged. *State* v. *Echols*, 203 Conn. 385, 392, 524 A.2d 1143 (1987). It is not sufficient to raise a mere suspicion that the witness may have committed the crime. *State* v. *Byrd*, supra, 34 Conn. App. 373.

On the basis of the facts of this case, the court was correct in refusing to instruct the jury as requested by the defendant. We are unpersuaded that the instruction that was given by the trial court deprived the defendant of a fair trial.

The defendant next claims that the trial court abused its discretion when it admitted into evidence certain color slides of Gianni's autopsy. The defendant claims that the slides were irrelevant and that their prejudicial effect greatly exceeded their probative value. We disagree. The balancing of the probative value of evidence against its prejudicial effect has been left to the sound discretion of the trial courts. *State* v. *Tucker*, 181 Conn.

---

[5] *A complaining or prosecuting witness is "the person who was chiefly injured, in person or property, by the act constituting the alleged crime . . . and who instigates [causes the instigation of] the prosecution . . . ." Black's Law Dictionary (6th Ed. 1990).*

406, 416, 435 A.2d 986 (1980). This determination will be disturbed only where there is a clear abuse of discretion or where manifest injustice has been done. Id.; *State* v. *Alford*, 37 Conn. App. 180, 186, 655 A.2d 782, cert. denied, 234 Conn. 914, 660 A.2d 357 (1995). Because we conclude that the challenged slides were relevant to the identification of Gianni, the time of death and the mode and manner of death, and were not sufficiently prejudicial to warrant reversal, we will not disturb the trial court's ruling of admissibility.

In his final claim, the defendant raises the unpreserved claim that the prosecutor's misconduct throughout the trial deprived him of a fair trial in violation of the due process clause of the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[6] He seeks review of this claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[7] Although the claim is reviewable under the first two prongs of *Golding*, the defendant cannot prevail under the third prong. The record here does not "disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Ricketts*, 37 Conn. App. 749, 762, 659 A.2d 188, cert.

---

[6] The defendant did not seek a mistrial based on the alleged prosecutorial misconduct. At the defendant's sentencing hearing, he submitted a "Supplement to Motion for Judgment of Acquittal," which the court treated as a motion for a new trial. This motion raised prosecutorial misconduct for the first time. The trial court, however, properly refused to consider the motion because it was not timely filed.

[7] In *Golding*, our Supreme Court established a four part test to determine if a defendant can prevail on an unpreserved claim. The court held that the following conditions must be met: (1) the record is adequate to review the claim of error; (2) the claim is of constitutional magnitude; (3) the constitutional violation clearly exists and deprived the defendant of a fair trial; and (4) if the claim is subject to harmless error review, the state has failed to demonstrate harmlessness beyond a reasonable doubt. *State* v. *Golding*, supra, 213 Conn. 239–40.

denied, 234 Conn. 913, 660 A.2d 355, cert. denied, 516 U.S. 977, 116 S. Ct. 481, 133 L. Ed. 2d 409 (1995). Our disposition of the issues in the defendant's preceding claims makes that evident.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

--------

[8] The defendant alleges that the prosecutor's misconduct falls into the following categories: (1) failing to disclose exculpatory materials; (2) coaching witnesses to testify about irrelevant and prejudicial matters; (3) using gruesome autopsy photographs to inflame the jury; and (4) misstating factual matters to the court by falsely representing that all exculpatory materials had been provided to the defendant.