******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTHONY SINCHAK *v.* COMMISSIONER
OF CORRECTION
(AC 37363)

Lavine, Sheldon and Flynn, Js.

*Argued November 17, 2016—officially released May 23, 2017*

(Appeal from Superior Court, judicial district of
Tolland, Swords, J. [judgment]; Mullins, J. [judgment].)

*Michael W. Brown*, assigned counsel, for the appellant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant
state's attorney, with whom, on the brief, were *Maureen
Platt*, state's attorney, and *Eva B. Lenczewski*, supervisory assistant state's attorney, for the appellee
(respondent).

*Opinion*

SHELDON, J. The petitioner, Anthony Sinchak, appeals from the judgment of the habeas court, denying his fifth amended petition for a writ of habeas corpus in this action, wherein he challenges the lawfulness of his conviction of murder and kidnapping in the first degree, which was rendered against him after a jury trial in the judicial district of Waterbury in 1995. On appeal, the petitioner claims that the habeas court erred in rejecting his claims that: (1) his due process rights were violated at his underlying criminal trial because the jury's guilty verdict was against the weight of the evidence; (2) he was deprived of effective assistance of counsel in the underlying criminal trial by the failure of his trial counsel, Michael Graham, to marshal the facts in his favor during closing argument and to move, after the verdict, for a judgment of acquittal on each charge of which he was found guilty on the ground that the jury's guilty verdict was against the weight of the evidence; (3) he was deprived of effective assistance of counsel on direct appeal from his underlying conviction by the failure of his appellate counsel, Pamela S. Nagy, to raise his weight of the evidence claims as grounds for reversing the conviction; and (4) he was deprived of effective assistance of counsel in a prior habeas corpus proceeding, in which he challenged the lawfulness of the same underlying conviction by the failure of his prior habeas counsel, Donald J. O'Brien, to raise the previously described clams of ineffective assistance of both trial and appellate counsel as grounds for obtaining relief in that proceeding. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to the petitioner's claims on appeal. On July 27, 1992, the victim, Kathleen Gianni, was working as a bartender at the Freight Street Social Club (social club), an illegal after-hours social club in Waterbury. The social club was jointly owned by Gianni's close friend, Jo Orlandi, and Dennis O'Connor, the president of the Helter Skelter Motorcycle Club (motorcycle club), of which the petitioner was a member. Dennis O'Connor's brother, Terrence O'Connor, who also was a motorcycle club member, worked as a doorman at the social club. *State* v. *Sinchak*, 47 Conn. App. 134, 136, 703 A.2d 790 (1997), appeal dismissed, 247 Conn. 440, 721 A.2d 1193 (1999), cert. denied, 319 Conn. 926, 125 A.3d 201 (2015).

Gianni had only recently returned to work at the social club, at the urging of Orlandi, following a brief, self-imposed absence arising from her fear of retaliation by members of the motorcycle club after she gave a statement to police concerning a July 12, 1992 incident between the motorcycle club and the Los Solidos gang, following which seven motorcycle club members, including Dennis O'Connor, were arrested.

As described by this court in its decision affirming the petitioner's underlying conviction on direct appeal, Orlandi and Gianni opened the social club for business at approximately 1 a.m. on July 27, 1992, after the motorcycle club had "held a barbecue fund-raiser to raise bail money for some incarcerated bikers. Both Orlandi and the [petitioner] attended the barbecue. The [petitioner] was accompanied by his girlfriend, Laura Ryan. . . . A number of people visited the [social] club that morning, including the [petitioner], Ryan, Terrence O'Connor and several other motorcycle club members. Also at the club that morning were Michael Lambo and James Palomba.

"The [petitioner] and Ryan remained in the back office when Orlandi began to lock the front doors of the club. The [petitioner] walked out from the back office and fired a shot at Gianni, who was standing behind the far end of the bar. The [petitioner] threatened Orlandi and Ryan with the gun, stating that he could not allow any witnesses to the shooting and then fired several more shots at Gianni who lay on the floor behind the bar moaning and gasping. After the [petitioner] fired the final, fatal shot, he grabbed Orlandi and Ryan, placed the gun to their heads and announced that the three of them were going to leave the club and stay together until the whole incident was straightened out.

"The three then went from the club to the Torrington residence of Lisa Fruin, the mother of the [petitioner's] infant son. Once at Fruin's residence, the [petitioner] disassembled the gun and ordered Fruin to dispose of the gun parts in a nearby dumpster. The [petitioner] disposed of the clothes that he had been wearing when he shot Gianni. The [petitioner] forced Ryan and Orlandi to remain with him and tied a bell to Orlandi's ankle while she slept so that he could hear if she attempted to escape.

"Around noon the next day, the [petitioner] allowed Orlandi to leave, but ordered Ryan to stay with her for at least twenty-four hours. Orlandi returned home with Ryan and they remained there until approximately 4 p.m. the next day. At that time, Ryan left Orlandi's home with Dave Martorelli, another motorcycle club member. That night, the [petitioner] and Martorelli disposed of Gianni's body and attempted to burn down the club.

"For the next several days, Orlandi denied any knowledge of Gianni's disappearance. On July 29, 1992, Orlandi opened the club at the request of the police, where evidence of the attempted arson and signs of the violence were discovered. The next day, Orlandi fled to Long Island, but ultimately returned to Connecticut and gave several statements to the police detailing the murder." *State* v. *Sinchak*, supra, 47 Conn. App. 136–38.

On April 21, 1995, following a jury trial at which the

foregoing evidence was presented, the petitioner was found guilty of murder in violation of General Statutes § 53a-54a and two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B). *Sinchak* v. *Commissioner of Correction*, 126 Conn. App. 684, 685, 14 A.3d 343 (2011). The petitioner was later sentenced on those charges to a total effective term of ninety-six years in prison.[1] This court affirmed the petitioner's conviction on direct appeal. *State* v. *Sinchak*, supra, 47 Conn. App. 136.[2]

The petitioner subsequently commenced three habeas corpus actions challenging the lawfulness of his conviction. "On July 26, 2000, and July 3, 2001, the petitioner filed two separate pro se petitions for a writ of habeas corpus, which the habeas court consolidated for trial." *Sinchak* v. *Commissioner of Correction*, 126 Conn. App. 670, 672, 14 A.3d 348, cert. denied, 301 Conn. 901, 17 A.3d 1045 (2011). The consolidated petitions alleged that the petitioner had been deprived of effective assistance of counsel in his underlying criminal trial in several ways not claimed in the instant appeal.[3] Id. On June 29, 2007, the habeas court, *Swords, J.*, issued a memorandum of decision denying the consolidated petitions. Id. The petitioner then petitioned for certification to appeal from the habeas court's judgment, which the habeas court also denied. Id. This court ultimately dismissed the petitioner's appeal from the habeas court's denial of the consolidated petitions. Id., 671.

On July 25, 2007, while the petitioner's appeal from the denial of the consolidated petitions was still pending, he commenced this action. In his original petition for a writ of habeas corpus herein, the petitioner alleged that he had received ineffective assistance of counsel in his prior habeas corpus proceeding. *Sinchak* v. *Commissioner of Correction*, supra, 126 Conn. App. 685. Because, however, the petitioner's appeal from the denial of relief in that proceeding was still pending at the time he commenced this action, the habeas court, *Swords, J.*, concluded that his claims in this action were "premature." Id., 686. On that basis, the court dismissed this action, sua sponte, for lack of subject matter jurisdiction. Id. The court thereafter granted the petitioner's petition for certification to appeal from its judgment of dismissal. Id.

On the petitioner's ensuing appeal from the habeas court's judgment of dismissal in this action, this court reversed that judgment on the ground that the habeas court improperly failed to appoint counsel for the petitioner after his original petition herein was docketed. Id., 692. On that basis, we remanded this case to the habeas court for further proceedings on the merits of the petitioner's claims. Id.

Before this action was brought to trial on remand, the petitioner filed several amended petitions expanding its substantive scope.[4] The action was ultimately tried on

the petitioner's fifth amended petition, filed January 3, 2014 (operative petition), in which he pleaded that: (1) his due process rights were violated in his underlying criminal trial because the jury's guilty verdict was against the weight of the evidence; (2) his trial counsel rendered ineffective assistance in the underlying trial by failing "adequately [to] marshal . . . facts during . . . closing argument" and failing to "file a motion for judgment of acquittal" on the ground that the jury's guilty verdict was against the weight of the evidence; (3) his appellate counsel rendered ineffective assistance on direct appeal from his underlying conviction by failing to raise his weight of the evidence claims as grounds for reversing the conviction; and (4) his prior habeas counsel rendered ineffective assistance in the prior habeas corpus proceeding by failing to raise either his weight of the evidence claims or his previously described claims of ineffective assistance of trial and appellate counsel as grounds for relief in that proceeding.

In his return to the petitioner's operative petition dated January 14, 2014, the respondent, the Commissioner of Correction, pleaded two special defenses.[5] His first special defense, which was pleaded only as to the first count of the operative petition, was that the petitioner had procedurally defaulted on his due process claim that the jury's guilty verdict was against the weight of the evidence. In support of that special defense, the respondent alleged that the petitioner had failed to raise his due process claim at his underlying criminal trial or on direct appeal from his underlying conviction, and that the petitioner could not establish sufficient cause for his procedural default or prejudice arising from it to excuse such default and permit review of the defaulted claims for the first time in this proceeding. The second special defense, which was separately pleaded as to each count of the petition, was that the claim therein pleaded was not a claim upon which relief could be granted in a habeas corpus proceeding because, under our case law, specifically *State* v. *Griffin*, 253 Conn. 195, 199–202, 749 A.2d 1192 (2000), the weight of the evidence claim on which it was based could only be assessed by the trial judge who had presided over the trial where the challenged verdict was returned.

The petitioner replied to the respondent's first special defense in a pleading dated January 15, 2014, by pleading in avoidance that if his due process claim was procedurally defaulted, the procedural default was cured by cause and prejudice, in that he had received ineffective assistance of counsel in each prior proceeding where his defaulted claim could have been raised. The petitioner denied the respondent's second special defense, but pleaded, in the alternative, that if our law supported that special defense, "the law should be changed."

After a two day trial, the habeas court, *Mullins, J.*, denied the petitioner's operative petition for a writ of habeas corpus. In so doing, the court first ruled that the petitioner had procedurally defaulted on his weight of the evidence claims by failing to raise them either at trial or on direct appeal. Thereafter, it ruled that the petitioner could not lift the bar to review of those procedurally defaulted claims by proving cause and prejudice based upon alleged ineffective assistance by trial or appellate counsel in failing to raise them because, as the respondent had pleaded in his second special defense, the habeas court itself was not legally competent to assess or make rulings as to the probable merits of those claims. In support of that ruling, the court determined, more particularly, that in order to establish either prong of ineffective assistance of counsel based upon the failure of his counsel to raise the petitioner's weight of the evidence claims either at trial or on direct appeal, the petitioner was required to establish that there was a reasonable probability that he would have prevailed on those claims had counsel timely raised them. Because, however, under *Griffin*, only the judge who presided over the trial where a challenged verdict was returned is legally competent to decide if that verdict was against the weight of the evidence, a judge in a later proceeding, such as a direct appeal or a habeas corpus proceeding, is not legally competent to decide such a claim on the basis of the cold printed record before it. *State* v. *Griffin*, supra, 253 Conn. 202. The court therefore ruled that the petitioner could not establish ineffective assistance of either trial or appellate counsel because the court itself could not decide whether he was likely to prevail on his weight of the evidence claim had counsel raised it at either his underlying criminal trial or on direct appeal from his underlying conviction.

For the latter reason as well, the court rejected the petitioner's separate claims of ineffective assistance of trial, appellate and prior habeas counsel, based upon their respective failures to raise his weight of the evidence claim at trial, on direct appeal or in the prior habeas corpus proceeding, because proof of any such claim required the petitioner to establish, and the habeas court to decide, in violation of *Griffin*, that there was a reasonable probability that he would have prevailed on that claim had counsel raised it in the earlier proceedings. So ruling, although the habeas court duly noted that the proper remedy for a successful challenge to a jury's verdict on weight of the evidence grounds is a new trial rather than a judgment of acquittal, the habeas court had no occasion to reach, or thus to rule on, the question of whether the petitioner's ineffective assistance claims should be rejected because they all were based on trial counsel's failure to move for a judgment of acquittal as to each charge of which the petitioner was convicted on weight of the evi-

dence grounds.

The court finally concluded that the petitioner's remaining two claims of ineffective assistance of counsel, both of which were based upon trial counsel's alleged failure to marshal the facts in the petitioner's favor during closing argument at his underlying criminal trial, were meritless in light of the obvious competence of trial counsel in delivering that closing argument. Upon finding that the petitioner had failed to meet his burden of proving either deficient performance by trial counsel in delivering his closing argument or prejudice arising from that performance, as required to prove ineffective assistance under the well established test enunciated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984),[6] the court rejected that claim, both as pleaded directly in the second count of his operative petition, and as pleaded derivatively, in his fourth count, as a basis for asserting ineffective assistance of prior habeas counsel for failing to raise that claim in the prior habeas proceeding.

Upon making the foregoing findings and rulings, the habeas court rendered judgment in favor of the respondent on all counts of the operative petition. Thereafter, the court granted the petitioner's petition for certification to appeal from its denial of the petition. This appeal followed.

Although the petitioner has raised four claims in this appeal from the habeas court's denial of his operative petition, all such claims are based upon challenges to the court's rejection of two common claims, which, alone or in combination, underlie each count of the petition. The first common underlying claim is that the jury's guilty verdict in the underlying criminal trial was against the weight of the evidence. The second common underlying claim is that the petitioner's trial counsel in the underlying criminal trial was ineffective in failing to marshal the facts in the petitioner's favor during closing argument. Because the ultimate disposition of those two common claims is dispositive of this entire appeal, we focus our analysis on the petitioner's challenges to the habeas court's resolution of those claims. For the following reasons, we agree with the respondent that the habeas court correctly resolved both claims, and thus that its judgment denying all counts of the operative petition must be affirmed.

I

We first address the petitioner's common underlying claim that the jury's guilty verdict in his underlying criminal trial was against the weight of the evidence. The petitioner asserted that claim directly, in count one of his operative petition, as a basis for claiming that his due process rights were violated in his underlying criminal trial. He also asserted that claim derivatively, in counts two, three and four of his petition, as a basis

for claiming that he was prejudiced by the failures of his trial, appellate and prior habeas counsel, respectively, to raise that claim either at his trial, on his direct appeal, and in his prior habeas corpus proceeding.

The respondent responded to count one of the operative petition, wherein the petitioner claimed a due process violation on the basis of his weight of the evidence claims, by specially pleading that the petitioner had procedurally defaulted on those claims by failing to raise them in either his underlying criminal trial or on direct appeal from his underlying criminal conviction. He further alleged that the petitioner could not establish sufficient cause for or prejudice arising from his procedural default to excuse such default and permit review of the defaulted claims in a habeas corpus proceeding. The petitioner replied to that special defense by pleading in avoidance that if his due process claim was procedurally defaulted, the procedural default was cured by cause and prejudice, arising from the ineffective assistance of counsel he had received in each prior proceeding in which his defaulted claim allegedly should have been raised.

The respondent further responded to all four counts of the petition by specially pleading that those counts fail to state claims upon which relief can be granted in a habeas corpus proceeding because they raise questions that could be decided only by the trial judge who had presided over the trial where the challenged verdict was returned.

The habeas court noted at the start of its analysis, as the petitioner had conceded, that the petitioner had not raised his weight of the evidence claims either at his underlying criminal trial or on direct appeal from the conviction rendered against him therein. The essential question thus presented on the petitioner's due process claim was whether the petitioner should be barred by his procedural default from raising those claims in this action.

In order for a habeas court to decide the merits of a petitioner's procedurally defaulted claim, the petitioner must typically demonstrate cause and prejudice for his failure to preserve that claim. *Chaparro* v. *Commissioner of Correction*, 120 Conn. App. 41, 48, 990 A.2d 1261, cert. denied, 297 Conn. 903, 994 A.2d 1287 (2010). "Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition." (Internal quotation marks omitted.)

"The cause and prejudice standard is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, [inadvertence] or ignorance . . . . [T]he existence of cause for a procedural default must

ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule. . . . Cause and prejudice must be established conjunctively. . . . If the petitioner fails to demonstrate either one, a trial court will not review the merits of his habeas claim." (Citations omitted; internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 191, 982 A.2d 620 (2009).

The reviewability of the petitioner's procedurally defaulted weight of the evidence claims thus depends upon the validity of the petitioner's plea in avoidance to the respondent's first special defense, to wit: that his procedural default should not bar him from prosecuting such claims in a habeas corpus action because the default had resulted from ineffective assistance by his trial and appellate counsel, which had caused him prejudice. A successful ineffective assistance of counsel claim can satisfy the cause and prejudice standard so as to cure a procedurally defaulted claim. *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 569–70, 941 A.2d 248 (2008); see also *Valeriano* v. *Bronson*, 209 Conn. 75, 83–85, 546 A.2d 1380 (1988) ("[T]he cause and prejudice test is unnecessary when a habeas court is faced with a claim formulated within the narrow confines of ineffective assistance of appellate counsel. . . . [W]e conclude that it is simpler and more appropriate to move directly to the *Strickland* test." [Citations omitted.]).

The legal principles that govern an ineffective assistance of counsel claim are well settled. See *Strickland* v. *Washington*, supra, 466 U.S. 687. "A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . .

"The second prong is . . . satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different." (Citation omitted; internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, 321 Conn. 767, 775–76, 138 A.3d 908 (2016).

A petitioner must prevail on both *Strickland* prongs. *Lewis* v. *Commissioner of Correction*, 165 Conn. App. 441, 451, 139 A.3d 759, cert. denied, 322 Conn. 901, 138 A.3d 931 (2016). Therefore, "[i]t is axiomatic that courts may decide against a petitioner on either prong, whichever is easier." Id.

Against this background, although the procedural bar to review of an unpreserved claim is usually lifted when the defaulting party alleges that his failure to raise that

claim in an earlier proceeding resulted from ineffective assistance of counsel,[7] such an allegation is insufficient to remove the bar to review of that claim if the petitioner cannot establish that he was prejudiced by counsel's failure to raise the claim previously. To establish such prejudice, the petitioner must demonstrate that his procedurally defaulted claim had sufficient merit such that there was a reasonable probability that he would have prevailed on that claim had counsel raised it in a timely manner.

In the present case, the habeas court ruled that it was unable to review the petitioner's claim that the jury's guilty verdict was against the weight of the evidence because, under our case law, only the trial judge who presided over the trial in which a challenged verdict was returned is legally competent to make that determination. If the habeas court was correct in so ruling, then its denial of the petitioner's first claim on appeal must be affirmed because the petitioner could never establish the prejudice element of ineffective assistance of counsel, as required to establish the reviewability of the claim under the cause and prejudice standard.

A trial court is empowered "to set . . . aside [a verdict] where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that [the jurors] or some of them were influenced by prejudice, corruption or partiality." (Internal quotation marks omitted.) *American National Fire Ins. Co.* v. *Schuss*, 221 Conn. 768, 774, 607 A.2d 418 (1992). "In passing upon a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. A juror who did not do this would be remiss in his duty. The trial judge in considering the verdict must do the same, or fail in the discharge of that function which the law has laid upon him; and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial." *Howe* v. *Raymond*, 74 Conn. 68, 72, 49 A. 854 (1901). Because the making of such a determination depends upon an assessment, not only of the probative value of the evidence presented at trial, but of the circumstances in which such evidence was presented to, argued before, and deliberated upon by the jury, considerable deference is

accorded to the trial judge's decision whether to grant or deny a motion to set aside the verdict in view of the judge's "superior opportunity to assess the proceedings over which he or she has personally presided." *State v. Hammond*, 221 Conn. 264, 269, 604 A.2d 793 (1992), abrogated in part on other grounds by *State v. Ortiz*, 280 Conn. 686, 720 n.19 and 722 n.22, 911 A.2d 1055 (2006).

Against this background, our Supreme Court decided, in *State v. Griffin*, supra, 253 Conn. 202, that a trial judge's special opportunity to assess the proceedings over which he or she has presided is so unique and indispensable in deciding if a jury's challenged verdict was against the weight of the evidence that such a claim could not be made for the first time before a different judge in a later proceeding. On that basis, the *Griffin* court ruled that a defendant's claim that he was entitled to a new trial on the ground that the verdict was against the weight of the evidence could not be reviewed on direct appeal. The *Griffin* court reasoned that "[i]t follows inexorably from the nature of the defendant's claim, namely, that the testimony of the state's key witness . . . was not believable, that the defendant's failure to raise such a claim in the trial court is fatal to his claim on appeal. On a cold record, we cannot meaningfully assess [the] credibility [of the state's key witness] to determine whether his testimony, which, if credited, concededly was sufficient to support the defendant's convictions, nevertheless was so unworthy of belief as to warrant a conclusion that allowing the verdict to stand wouldn't constitute a manifest injustice. . . . Only the trial judge was in a position to evaluate [the state's key witness'] testimony, along with the other relevant evidence, to make such a determination." (Citations omitted.) Id.

In the present case, the habeas court stated that, in order to demonstrate prejudice resulting from trial counsel's failure to move to set aside the verdict as against the weight of the evidence, the petitioner was required to prove that the "manifest injustice of the verdict [was] so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that [the jurors] or some of them were influenced by prejudice, corruption or partiality. . . . The petitioner has presented no evidence to support such a showing here." (Citation omitted; internal quotation marks omitted.)

Instead, the court noted that "all the petitioner has done is present this court with the transcripts from the criminal trial, which he admits contain evidence to support the jury's verdict. . . . [T]he petitioner is simply asking this court to act as another juror or as the trial judge and retry the criminal case. . . . Here, this court had no opportunity to view the witnesses, assess their credibility or determine what weight should have

been given to their testimony. This court had no opportunity to gauge the tenor of the trial. Thus, this court cannot, based on a cold printed record of the criminal trial, conclude that the jury's verdict was against the weight of the evidence. Significantly, without demonstrating that the jury misapplied any legal principles or that the jury was influenced by prejudice, corruption or partiality, the petitioner's claim falls outside specific limitations permissible for a trial court to set aside a jury verdict as against the weight of the evidence.

"Indeed, the petitioner presents nothing more than a claim that conflicting evidence should have been resolved in his favor. . . . In this case, the jury has resolved the conflicting evidence against the petitioner, and nothing has been presented to this court that undermines confidence in the jury's verdict . . . . Consequently, the petitioner has failed to demonstrate any prejudice." (Citations omitted.)

In the present case, the petitioner's weight of the evidence claim was not raised at trial or on direct appeal. Raised for the first time, as it was, in the habeas corpus proceedings, the claim is unreviewable in this action under the rule of *Griffin*, because only a trial court is in the position to determine if a challenged verdict was against the weight of the evidence. The petitioner therefore cannot satisfy the cause and prejudice standard to permit the review of his procedurally defaulted claim because he cannot make the requisite showing of prejudice, as required to prove ineffective assistance of counsel in failing to raise that claim either at trial or on appeal.

As with the petitioner's direct claim that the jury's guilty verdict was against the weight of the evidence, the petitioner's derivative claims of ineffective assistance by trial, appellate, and first habeas counsel for failing to raise that claim, respectively, at trial, on direct appeal, and in his prior habeas corpus proceeding are obviously dependent upon the merits of the petitioner's weight of the evidence claim. The petitioner's claim in count two, which is that his trial counsel was ineffective in failing to raise the weight of the evidence claims at trial, is, in all respects, identical to the claim of ineffective assistance by which he sought to satisfy the cause and prejudice standard with respect to the due process claim pleaded directly in count one. Similarly, the petitioner's claims in counts three and four, of ineffective assistance by appellate counsel for failing to raise the claim pleaded in count one as a ground for relief on direct appeal and failing to raise the ineffective assistance claims pleaded in counts two and three as grounds for relief in his prior habeas corpus proceeding, required proof of the probable merits of the petitioner's weight of the evidence claim, which, as with the other counts of the petition, only the trial judge was legally competent to decide. Because we conclude that the

habeas court was not empowered to decide the probable merits of the petitioner's weight of the evidence claims under any count of the operative petition, as was required to establish ineffective assistance of counsel based upon counsel's failure to assert those claims either at trial, on appeal, or in the prior habeas corpus proceeding, we affirm the habeas court's decision rejecting all of those claims as well.

## II

The second common underlying claim, upon which the remainder of the petitioner's claims in this action are based, is that trial counsel in his underlying criminal trial was ineffective in failing to marshal the facts in the petitioner's favor during closing argument. The petitioner asserted that claim directly in the second count of his operative petition, and derivatively in his fourth count as a basis for alleging ineffective assistance by prior habeas counsel in failing to raise that claim in the prior habeas corpus proceeding. The habeas court rejected that claim on the merits after reviewing the record of the underlying criminal trial. If we agree with the habeas court that the petitioner's trial counsel was not ineffective in failing to marshal the facts in the petitioner's favor during closing argument in his underlying criminal trial, then we must affirm the habeas court's rejection of both of the petitioner's resulting ineffective assistance claims.

We begin by setting forth our standard of review. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, supra, 321 Conn. 775.

The legal principles that govern an ineffective assistance claim, as previously noted, are well settled. See *Strickland* v. *Washington*, supra, 466 U.S. 687. "A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . .

"The second prong is . . . satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different." (Citation omitted; internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, supra, 321 Conn. 775–76.

Regarding the performance prong, "[j]udicial scrutiny of counsel's performance must be highly deferential.

. . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Spearman* v. *Commissioner of Correction*, 164 Conn. App. 530, 539, 138 A.3d 378, cert. denied, 321 Conn. 923, 138 A.3d 284 (2016).

A petitioner must satisfy the two-pronged test set forth in *Strickland. Lewis* v. *Commissioner of Correction*, supra, 165 Conn. App. 451. Therefore, "[i]t is axiomatic that courts may decide against a petitioner on either prong, whichever is easier." Id.

The habeas court's findings support the conclusion that the petitioner's trial counsel was not ineffective in marshaling the facts in his favor during the closing argument. Thus, although noting that "[t]he petitioner's posttrial brief specifie[d] a virtual tsunami of . . . failures [to adequately marshal facts in the closing argument],"[8] the habeas court flatly disagreed. Upon reviewing Graham's closing argument, it concluded, without equivocation, that the argument was "well within the boundaries of reasonable professional judgment." We agree.

During his closing argument, Graham necessarily determined which topics to cover from the lengthy criminal trial. The petitioner, in his posttrial brief and again on appeal, noted that during the five week trial, "evidence was presented over the course of eighteen days and included testimony from forty-one different witnesses." At the start of his hour-long closing argument, Graham took note of this fact, stating that he was "not going to remember every contradiction that happened in this case," and thus that he was "just not going to remember to cover every point. There's too many of them." Noting that the trial had been long, and that there had been many witnesses, Graham cautioned the jury that if he did not mention something in his closing argument, it "[did not] mean [it was] not worth" the jury's consideration.

The habeas court also found that when Graham "reached the end of that hour, the state objected to his continuing to present arguments. The trial court extended the hour" by a few minutes to allow Graham to conclude.

"Second, and perhaps more significantly," the court continued, "in the time allotted to him for closing argument, [Graham] highlighted many discrepancies in the

evidence presented to the jury, emphasizing the internal and external inconsistencies of the story conveyed by [Orlandi] with the forensic evidence and common sense analysis. . . . At the very end of his argument, [Graham] again told the jury to 'please understand because I didn't mention something here doesn't mean it's not important. And I want you to look at all the evidence in the case critically before coming to any conclusion.' "

In the end, the habeas court concluded that the petitioner had not overcome the presumption that counsel "exercised reasonable professional judgment, employed a reasonable strategy, and performed adequately in selecting and presenting his arguments to the jury. Additionally, the petitioner has not shown that any purported errors deprived him of a fair trial, nor that they even had some conceivable effect on the outcome of the trial, nor has he undermined this court's confidence in the outcome of the criminal trial. The claim of ineffective assistance related to the closing arguments, therefore, fails on both the performance and prejudice prongs."

Additional facts are necessary for the resolution of this claim. Graham had elicited testimony from Lambo during the underlying criminal trial that Terrence O'Connor was believed to be in charge of ordering hits for the motorcycle club. Moreover, Lambo testified that O'Connor and three other men, all dressed in red shirts as members of the motorcycle club, were at the social club on the night that the victim was murdered. He stated that O'Connor entered Orlandi's office, and that the three other men in red shirts left the social club, but that O'Connor never left Orlandi's office after entering it a second time. Lambo testified that he never saw O'Connor exit the social club.

We agree with the habeas court that the petitioner's claim of ineffective assistance in closing argument fails on both the performance and the prejudice prongs. In his closing argument, Graham challenged, in a variety of ways, the credibility of the state's three key witnesses, Orlandi, Ryan and Fruin. Graham argued that Orlandi "wrote the script" of the story that blamed the petitioner for the murder, a story which Ryan and Fruin adopted. Graham explicitly asked the jury to not trust Orlandi's, Ryan's or Fruin's testimony. He argued that Ryan had adopted Orlandi's "script" because she was pressured to do so by her parents and the police, and that Fruin had done the same because she feared going to jail and losing custody of her child. He stated that to implicate the petitioner in the murder was less dangerous for all three witnesses than to implicate other members of the petitioner's motorcycle gang, who remained at liberty in the community in a position to harm them.

Graham argued, more specifically, that there were several important reasons for doubting Orlandi's credibility, including that her story was internally inconsis-

tent and that the murder could not have occurred in the manner that she and Ryan had described. Graham argued that there had been inconsistencies between the witnesses' statements and their testimony at trial, and suggested that the murder had occurred in a different manner than that to which they had testified. He highlighted Orlandi's actions that exhibited a consciousness of guilt, including driving the getaway car and hiding evidence. He argued that the police did a sloppy and careless job, and failed to investigate other possible suspects because they had focused exclusively on the petitioner. He also argued that bullet evidence may have been planted and should be disregarded by the jury, and that witness testimony refuted the state's claim that the petitioner possessed the gun that was used to murder the victim. Graham also pointed to Terrence O'Connor who, he argued, should always have been considered a suspect.

During his closing argument, Graham also highlighted the testimony of Palomba and Lambo, both of whom testified that the petitioner had left the social club prior to the shooting. In the end, however, he reiterated that "the biggest doubts you ought to have is the integrity of [Orlandi] and [Ryan]." Hence, after positing several supportable theories as to what may have occurred, he reminded the jurors of the state's heavy burden of proof and concluded that the evidence before them, Orlandi and Ryan's testimony, prevented them from finding that the state had satisfied that heavy burden.

We find that the petitioner's trial counsel gave a well reasoned and detailed closing argument. As Graham was not required to take any particular approach in the argument, nor to address every facet of the case, we conclude that he did not provide ineffective assistance of counsel. See *Yarborough* v. *Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) ("selection of arguments for summation is a core exercise of defense counsel's discretion"). Graham had a limited amount of time in which to present the main themes of the petitioner's defense in a long and complicated trial, and he did so competently. He was not required to present every minor detail of his defense theory. "Even if some of the arguments would unquestionably have supported the defense, it does not follow that counsel was incompetent for failing to include them. Focusing on a small number of key points may be more persuasive than a shotgun approach." Id., 7. Moreover, Graham's argument mainly addressed how the jury should not believe the testimony of Orlandi, Ryan and Fruin, which is precisely what the petitioner claims he should have done.

When a convicted defendant complains of ineffectiveness of counsel, he must show that counsel's representation fell below an objective standard of reasonableness. *Johnson* v. *Commissioner of Correc-*

*tion*, supra, 285 Conn. 577. We agree with the habeas court that, on the basis of the record before us, the petitioner has not met that burden here. Because the petitioner's claim of ineffective assistance of trial counsel for failing adequately to marshal the facts in his favor during the closing argument fails on the merits, so does his derivative claim of ineffective assistance of prior habeas counsel for failing to raise that claim in the prior habeas proceeding.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner received consecutive sentences of sixty years imprisonment for murder, eighteen years for the kidnapping of Orlandi, and eighteen years for the kidnapping of Ryan.

[2] The petitioner filed his direct appeal in the Supreme Court initially, but it was subsequently transferred to this court. See *State* v. *Sinchak*, supra, 47 Conn. App. 135 n.1.

[3] Those reasons include that the petitioner's trial counsel allegedly (1) failed to file a motion to discover certain exculpatory statements prior to the hearing in probable cause, (2) failed to conduct an adequate pretrial investigation, (3) failed to hire a forensics expert, (4) failed to move for a mistrial or dismissal, (5) failed to confront certain witnesses with conflicting testimony, (6) failed to timely file a motion for a new trial, (7) failed to speak on his behalf at sentencing, and (8) was intoxicated during portions of the trial.

[4] The petitioner also commenced a third habeas proceeding by filing a third petition for habeas corpus on October 13, 2010, which was subsequently declined due to the petitioner's failure to comply with Practice Book § 23-24. The habeas court denied the petitioner's petition for certification and this court dismissed the petitioner's appeal from that decision on April 19, 2011.

[5] "When a respondent seeks to raise an affirmative defense of procedural default, the rules of practice require that he or she must file a return to the habeas petition 'alleg[ing] any facts in support of any claim of procedural default . . . or any other claim that the petitioner is not entitled to relief.' Practice Book § 23-30 (b). 'If the return alleges any defense or claim that the petitioner is not entitled to relief, and such allegations are not put in dispute by the petition, the petitioner shall file a reply.' Practice Book § 23-31 (a). 'The reply shall allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default.' Practice Book § 23-31 (c)." *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 567, 941 A.2d 248 (2008).

[6] See generally *Strickland* v. *Washington*, supra, 466 U.S. 687 (setting forth two-pronged analysis standard for claims of ineffective assistance of counsel).

[7] See *Johnson* v. *Commissioner of Correction*, supra, 285 Conn. 569–70.

[8] As described by the habeas court, they included alleged failures to "undermine [Orlandi's] credibility; undermine [Ryan's] credibility; undermine [Fruin's] credibility; undermine the time line provided by [Orlandi] and [Ryan] with the testimonies of [Palomba] and [Lambo]; undermine [Ryan's] version of events with Dr. Edward McDonough's testimony; argue that the blood found in Silvio Martorelli's car did not match the victim's blood; effectively use the testimony of Nancy Fogerty, highlight the circumstances under which Ryan's first statement was given to police; show that [Orlandi] had the opportunity to create her version of events based on her observation of the destroyed club; argue [Orlandi's] and [Ryan's] culpability; use the facts related to [Orlandi's] keys; highlight the contradiction between [Orlandi's] version of the shooting and [Ryan's] version of the shooting; illustrate the discrepancy over the number of bullets fired; and stress the facts regarding [Orlandi] and [Fruin's] opportunity to escape."