******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# TROY MCCARTHY *v.* COMMISSIONER OF CORRECTION
## (AC 40926)

Prescott, Elgo and Pellegrino, Js.

*Syllabus*

The petitioner, who had been convicted of murder in connection with the shooting death of the victim, sought a second writ of habeas corpus, claiming, inter alia, that his right to due process was violated because his decision to reject the state's plea offer was not made knowingly and voluntarily, and that his trial counsel for bond purposes, E, had rendered ineffective assistance. At the petitioner's arraignment, E filed an appearance on the petitioner's behalf for bond purposes only, and, at subsequent pretrial proceedings, E reiterated that he had appeared for bond purposes only and informed the court that he did not intend to remain in the case and that he would return his retainer to the petitioner's family. Although the trial court discharged E from the case on March 10, 2004, at some point prior to April 9, 2004, E's investigator interviewed two witnesses to the shooting who previously had provided statements to the police implicating the petitioner. On the basis of the investigator's interview notes, E then prepared affidavits for the witnesses in which they purportedly recanted their prior statements and indicated that the police had coerced them to make those statements. The trial court subsequently appointed new counsel, S and K, to represent the petitioner, and the witnesses' signed affidavits became part of S and K's criminal trial file. Thereafter, the petitioner rejected a plea offer from the state and the case proceeded to trial, at which the petitioner impeached the two witnesses with their affidavits after they testified for the state, identified the petitioner as the shooter, and denied telling the investigator that they had been coerced by the police into making their prior statements. E thereafter testified for the state, stating that although he had used the investigator's notes to prepare the affidavits, he had made up certain information to fill in narrative gaps. The petitioner alleged in count one of his second habeas petition that his right to due process of law was violated because his decision to reject the state's plea offer was not knowing and voluntary, in that he was misled as to the strength of the state's case against him by virtue of E's fabrication of the affidavits without his knowledge. In count three, the petitioner alleged that E had rendered ineffective assistance by causing him to misunderstand the strength of the evidence against him by fabricating the affidavits. The habeas court concluded that the petitioner had procedurally defaulted his due process claim because he failed both to raise it in his direct appeal and to establish cause for his default. The habeas court further determined that because E was not representing the petitioner at the time he fabricated the affidavits or at the time the petitioner rejected the state's plea offer in reliance on those affidavits, an ineffective assistance of counsel claim against E was not cognizable as a matter of law. The habeas court rendered judgment denying the habeas petition, from which the petitioner, on the granting of certification, appealed to this court. *Held*:

1. The habeas court properly determined that the petitioner's due process claim was subject to procedural default and that the petitioner failed to demonstrate good cause to excuse the procedural default of that claim: notwithstanding the petitioner's claim that his due process claim was not susceptible to procedural default because it was premised on E's alleged ineffective assistance, the plain language of count one, viewed in the context of the entire amended habeas petition, alleged a freestanding due process claim, not an ineffective assistance of counsel claim, that could have been raised either at the petitioner's criminal trial, when E testified about fabricating the affidavits and the basis for the due process claim first became apparent, or on direct appeal, on the basis of the record established by E's testimony; accordingly, because the petitioner failed to raise his due process claim at his trial or on direct appeal, and the respondent Commissioner of Correction raised the

defense of procedural default as to count one, the burden shifted to the petitioner to prove why the default should be excused, which he failed to do.

2. The habeas court erred in concluding that the petitioner's claim that E rendered ineffective assistance of counsel was not cognizable as a matter of law because E did not represent the petitioner at the time he fabricated the affidavits or when the petitioner relied on those affidavits and rejected the state's plea offer: ineffective assistance of counsel claims are not limited to actions taken by attorneys who are counsel of record or who appeared in court, but may be maintained in cases in which a nonappearing attorney is alleged to have rendered deficient performance that subsequently has an adverse impact on the petitioner's criminal case if, on the basis of the totality of the circumstances, the nonappearing attorney was representing the petitioner as counsel for purposes of the sixth amendment at the time he rendered the deficient performance; moreover, in the present case, in considering the scope and duration of the attorney-client relationship, the habeas court unduly focused on E's presence in the courtroom, the nature of his written appearance, and the date on which the criminal court discharged him from the case, and improperly disregarded evidence that E's representation was not limited to appearing for bond purposes and that he continued to perform out-of-court work on the petitioner's behalf even after his appearance was withdrawn, especially given that it was unclear whether E's retainer covered professional services beyond representing the petitioner at arraignment and there was evidence in the record that E prepared the affidavits and performed out-of-court work on behalf of the petitioner after the bond hearing; accordingly, because the court focused unduly on the nature of E's written appearance and official representation, and because the question of whether an attorney-client relationship exists presents a mixed question of law and fact, the case was remanded to the habeas court for a new trial on count three of the amended habeas petition and a determination on the issue of whether E continued to represent the petitioner for purposes of the sixth amendment at the time he fabricated the affidavits.

Argued March 19—officially released September 17, 2019

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Reversed in part*; *new trial.*

*Robert L. O'Brien*, assigned counsel, with whom on the brief was *Christopher Y. Duby*, assigned counsel, for the appellant (petitioner).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *Angela R. Macchiarulo*, senior assistant state's attorney, and *Michael Proto*, assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The petitioner, Troy McCarthy, appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court denying his petition for a writ of habeas corpus. In his underlying criminal case, the petitioner allegedly rejected a plea offer from the state after being misled regarding the strength of the state's case against him because his prior counsel, Joseph Elder, fabricated affidavits from certain eyewitnesses to the underlying crime. The habeas court denied the petition on the ground that an ineffective assistance of counsel claim was not cognizable because Elder was no longer representing the petitioner when he fabricated the affidavits or at the time the plea offer was made.

On appeal, the petitioner claims that the habeas court improperly concluded that (1) count one of his amended petition alleging a due process violation was procedurally defaulted because he failed to sustain his burden to establish good cause for his failure to raise this claim at trial or on direct appeal and (2) an ineffective assistance of counsel action regarding Elder was not cognizable because Elder did not represent him at the time that Elder fabricated the witnesses' affidavits or at the time that the petitioner, in reliance on these affidavits, rejected the state's plea offer. We conclude that the court properly determined that count one of the petitioner's amended petition was barred by procedural default. We agree, however, with the petitioner that the court improperly denied count three of his amended petition alleging ineffective assistance by Elder because, in assessing his sixth amendment right to the effective assistance of counsel, the habeas court applied an unduly narrow view of the scope and duration of the attorney-client relationship. Accordingly, we affirm in part and reverse in part the judgment of the habeas court.

The relevant facts, as set forth in the habeas court's memorandum of decision and in this court's decision resolving the petitioner's direct appeal, are as follows: "On September 25, 2003, the [petitioner] and the victim, Raymond Moore, were standing near the corner of Westland Street and Garden Street in Hartford, in front of the former Nelson & Son's Market, when they engaged in a physical altercation. After the victim slammed the [petitioner]'s body onto the sidewalk, several people intervened and stopped the fight. The [petitioner], humiliated, left the scene but stated that he would be back. Later, the [petitioner] returned with a gun, but the victim was not there. A friend of the victim, Robert Ware, and others told the [petitioner] that 'it wasn't worth it.' The [petitioner], however, responded that the victim was going to respect him.

"Two days later, on September 27, 2003, the victim

returned to the area and was standing in front of Nelson & Son's Market speaking with Ware. Ware then went across Westland Street and entered Melissa's Market to buy cigarettes. A homeless woman from the area, Mary Cauley, who was on her way to the C-Town Market on Barbour Street, approached the victim and told him that he should go home to his family. She then continued on her way to the C-Town Market, walking north on Garden Street, where she saw the [petitioner] standing on his front porch. Cauley said hello to the [petitioner], who instructed her to get out of the way. When she got to the C-Town Market, Cauley heard gunshots.

"Upon hearing a gunshot, Ware immediately ran out of Melissa's Market as a second gunshot was fired. Looking up Garden Street, Ware saw the victim falling to the ground and saw the [petitioner] running in the opposite direction carrying a gun. At that same time, Maurice Henry, Chauncey Odum and Tylon Barlow were in a vehicle in the parking lot behind Nelson & Son's Market smoking 'blunts.' Henry was in the driver's seat. As he began to drive out of the parking lot, onto Garden Street, Henry saw the victim walking north. He then saw the [petitioner] emerge from the rear yard of a Garden Street building, carrying a gun. Henry saw the [petitioner] shoot the victim twice." (Footnote omitted.) *State* v. *McCarthy*, 105 Conn. App. 596, 598–600, 939 A.2d 1195, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008).

The petitioner was arrested on March 1, 2004, and charged with murder in violation of General Statutes § 53a-54a, carrying a pistol without a permit in violation of General Statutes § 29-35, and criminal possession of a firearm in violation of General Statutes § 53a-217. Elder entered a court appearance on the petitioner's behalf at his first bond hearing on March 2, 2004. The appearance form indicated that the appearance was for bond purposes only. See Practice Book § 3-6. On March 10, 2004, Elder "informed the court that he did not intend to file a full appearance in the petitioner's case, and that he would return the petitioner's retainer," and the court permitted him to withdraw his court appearance. On March 29, 2004, Attorney R. Bruce Lorenzen, a public defender, entered his appearance on the petitioner's behalf but withdrew from the case on June 23, 2005, due to a conflict of interest. The court then appointed special public defenders, Attorneys Michael O. Sheehan and George G. Kouros, to represent the petitioner.[1]

Sometime between March 3, 2004, and April 9, 2004, Elder's private investigator, Homer Ferguson, interviewed Henry and Cauley, eyewitnesses to the shooting. Elder prepared affidavits based on Ferguson's notes from these interviews. The affidavits were signed by Henry and Cauley on April 9, 2004. In their affidavits, both witnesses purportedly recanted the prior state-

ments that they had made to the police implicating the petitioner in the shooting and, instead, indicated that the investigating detective had "intimidated, coerced and pressured [them] to provide inculpatory testimony against the petitioner." Their affidavits further indicated that they did not know who shot the victim. After Lorenzen was appointed to represent the petitioner, Elder placed the affidavits in the copy of the file he shared with Lorenzen, and the affidavits ultimately became part of Sheehan and Kouros' file.[2]

The petitioner pleaded not guilty to all charges and elected a jury trial. During jury selection, the state extended a plea offer to the petitioner that would have required him to plead guilty to manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a in exchange for a maximum sentence of fifteen years of incarceration with a right to argue for a lower sentence of no less than ten years of incarceration. After consulting with Sheehan and Kouros, the petitioner rejected the state's offer and proceeded to trial.

At the petitioner's criminal trial, Henry and Cauley testified for the state and identified the petitioner as the shooter in the victim's murder. On cross-examination, the petitioner impeached Henry and Cauley with the affidavits that had been prepared by Elder. Both witnesses testified that they never told Ferguson that the police had intimidated, coerced, and pressured them to identify the petitioner as the shooter.

The state also called Elder to testify at the petitioner's criminal trial. He testified that he had used Ferguson's notes from his meetings with Henry and Cauley to prepare the affidavits. The prosecutor asked if he "[made] things up" in the affidavits, which he answered by saying: "What I did was, I filled in the gap. And the idea would be to fill in the gap to see if that would be what the witness would agree to. It was not information that came directly from the witness, it was information that I provided . . . ." The prosecutor then asked, "where did you get that information from," to which Elder responded: "I made it up." The prosecutor asked if he believed that he had fabricated evidence, and Elder replied: "No, because it wasn't information that would have been substantial or substantive in that way. It was information that did not go to the substance of the case." As an example, Elder noted that Henry's claim that he did not witness the shooting was not something he would fabricate. The prosecutor then asked if Elder would fabricate the phrase "out of fear and through intimidation," and Elder indicated that the phrase was "something [he] would put in there." When asked if he often editorialized witnesses' affidavits, Elder stated: "I don't generally do that. But, in doing this particular one, my recollection is that I felt that it needed a little oomph." Elder had not informed the petitioner or any

of his attorneys that he had fabricated the affidavits.

The petitioner subsequently was convicted of murder in violation of § 53a-54a. He was sentenced to fifty years of incarceration.

On direct appeal, the petitioner claimed that "(1) the court improperly denied his motion for a new trial, (2) the court improperly admitted certain impeachment evidence for substantive purposes, (3) the court improperly instructed the jury and (4) he was deprived of a fair trial due to prosecutorial impropriety." *State* v. *McCarthy*, supra, 105 Conn. App. 598. We subsequently affirmed his conviction. Id.

The petitioner filed his first petition for a writ of habeas corpus on January 9, 2007, in which he was represented by Attorney Robert J. McKay. In his first habeas action, McKay did not raise a claim of ineffective assistance of counsel against Elder.[3] The habeas court, *Cobb*, *J.*, denied the petition on March 22, 2012. *McCarthy* v. *Warden*, Docket No. CV-07-4001548-S, 2012 WL 1222247, *1 (Conn. Super. March 22, 2012). The petitioner was granted certification to appeal on March 28, 2012, but the appeal was withdrawn on February 4, 2013.

The petitioner commenced this second habeas corpus action in February, 2013. His amended petition, filed on December 6, 2016, contained four counts. Count one raised a due process claim in which he alleged that his decision to reject the state's plea offer was not knowingly and voluntarily made because he was misled regarding the strength of the state's case against him by Elder's fabrication of the affidavits from eyewitnesses to the underlying crime without his knowledge. Count two alleged ineffective assistance of counsel by McKay for failing to plead and litigate in his first habeas action the freestanding due process claim alleged in count one. Count three alleged ineffective assistance of counsel by Elder for causing him to misunderstand the strength of the evidence against him in the underlying criminal prosecution. Finally, count four alleged ineffective assistance of counsel by McKay for failing to plead and litigate the ineffective assistance of counsel claim alleged in count three.[4]

In its return, the respondent raised the special defense of procedural default with respect to count one of the petitioner's amended complaint, his freestanding due process claim. Importantly, the respondent did not raise procedural default as a special defense to any of the other claims in the petitioner's amended petition.[5]

In his reply, the petitioner asserted that "[c]laims of due process that involve or stem from the ineffective assistance of trial counsel and prior habeas counsel, as alleged in count one, negate an alleged procedural default, such that cause and prejudice need not be shown . . . ." The petitioner further asserted that "the

issue could only properly be raised for the first time in a habeas petition;" therefore, "[p]rior habeas counsel was ineffective for failing to raise this issue at that time."

In a memorandum of decision, the habeas court, *Oliver, J.*, denied the petition, concluding, inter alia, that the freestanding due process claim in count one of the amended petition was procedurally defaulted. Because the respondent did not allege that the claim raised by the petitioner in count three was procedurally defaulted, the habeas court reached the merits of that claim. The court, however, concluded that because Elder's representation of the petitioner ended on March 10, 2004, an ineffective assistance of counsel claim against Elder, as a matter of law, could not be maintained with respect to the conduct alleged in count three of the amended petition.[6] The petitioner sought certification to appeal, which the court granted on September 27, 2017. This appeal followed.

I

The petitioner first claims that the habeas court improperly concluded that he failed to demonstrate good cause to overcome procedural default of the due process claim alleged in count one of the amended petition. Specifically, the petitioner argues that his due process claim stems from the ineffective assistance of Elder and, therefore, is not susceptible to procedural default. We agree with the habeas court that the due process claim was procedurally defaulted.

"In essence, the procedural default doctrine holds that a claimant may not raise, in a collateral proceeding, claims that he could have made at trial or on direct appeal in the original proceeding . . . ." *Hinds* v. *Commissioner of Correction*, 151 Conn. App. 837, 852, 97 A.3d 986 (2014), aff'd, 321 Conn. 56, 136 A.3d 596 (2016). Claims that are "fully capable of being raised and decided in the trial court or on direct appeal" are distinguishable from "a typical claim of ineffective assistance of counsel under [*Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed 2d 674 (1984)],[7] which can only be adequately litigated in a collateral proceeding . . . ." *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 646, 153 A.3d 1264 (2017). Typical claims of ineffective assistance of counsel require the court to determine whether "counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Strickland* v. *Washington*, supra, 689. "The trial transcript seldom discloses all of the considerations of strategy that may have induced counsel to follow a particular course of action." *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). "[C]laims

[such as] structural error based on the complete denial of counsel in a proceeding [however] would be apparent on the record." *Taylor* v. *Commissioner of Correction*, supra, 646. "Habeas, as a collateral form of relief, is generally available to litigate constitutional issues only if a more direct route to justice has been foreclosed through no fault of the petitioner." (Internal quotation marks omitted.) *Gaskin* v. *Commissioner of Correction*, 183 Conn. App. 496, 511, 193 A.3d 625 (2018).

If the state "alleges that a [petitioner] should be procedurally defaulted from now making the claim, the [petitioner] bears the burden of demonstrating good cause for having failed to raise the claim directly, and he must show that he suffered actual prejudice as a result of this excusable failure." *Hinds* v. *Commissioner of Correction*, supra, 151 Conn. App. 852. "The cause and prejudice standard is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, [inadvertence] or ignorance . . . . [T]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule. . . . Cause and prejudice must be established conjunctively. . . . If the petitioner fails to demonstrate either one, a trial court will not review the merits of his habeas claim." (Internal quotation marks omitted.) *Sinchak* v. *Commissioner of Correction*, 173 Conn. App. 352, 366, 163 A.3d 1208, cert. denied, 327 Conn. 901, 169 A.3d 796 (2017).

It is true that "[a] successful ineffective assistance of counsel claim can satisfy the cause and prejudice standard so as to cure a procedurally defaulted claim." Id. Indeed, "[i]f a petitioner can prove that his attorney's performance fell below acceptable standards, and that, as a result, he was deprived of a fair trial or appeal, he will necessarily have established a basis for cause and will invariably have demonstrated prejudice." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 570, 941 A.2d 248 (2008).

It is with these principles in mind that we turn to the petitioner's claim that the court improperly concluded that he failed to demonstrate good cause to overcome procedural default of the due process claim alleged in count one of the amended petition. "The habeas court's conclusion that the petitioner is procedurally defaulted from raising his [due process] claim before the habeas court involves a question of law. Our review is therefore plenary." *Chaparro* v. *Commissioner of Correction*, 120 Conn. App. 41, 46, 990 A.2d 1261, cert. denied, 297 Conn. 903, 994 A.2d 1287 (2010).

As an initial matter, we agree with the court that the petitioner alleged a freestanding[8] due process claim in the first count of his amended petition, not an ineffec-

tive assistance of counsel claim as he asserted in his reply to the state's return and in his brief on appeal. "It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . [Although] the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . The purpose of the [petition] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise. . . . [T]he [petition] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Internal quotation marks omitted.) *Newland* v. *Commissioner of Correction*, 322 Conn. 664, 678, 142 A.3d 1095 (2016).

The plain language of count one of the amended petition alleges a due process claim, not an ineffective assistance of counsel claim. Count one is titled "Due Process Violation: Involuntary Plea on Account of Petitioner's Fundamental Misunderstanding of the State's Evidence" and alleges that the petitioner's "conviction and incarceration are illegal because they were obtained in violation of his state and federal constitutional rights to due process of law . . . ." Moreover, a reading of the entire amended petition supports the conclusion that count one alleges a freestanding due process claim because the petitioner also alleges in count three a separate claim of ineffective assistance of counsel by Elder. That count is based on the same conduct by Elder and would be duplicative of count one if it was interpreted as the petitioner argues. This construction of the amended petition supports the court's conclusion that the due process claim in count one, although related to the claim of ineffective assistance by Elder, is a separate, freestanding due process claim subject to procedural default, unless the petitioner establishes good cause and prejudice for having failed to raise the claim at trial or on direct appeal.

The petitioner's assertion that he could not pursue this argument on direct appeal because it was unpreserved at the underlying criminal trial is unavailing. The petitioner was not only capable of raising the freestanding due process claim on direct appeal, but could have raised the issue at trial when it first became apparent. When Elder testified to having fabricated portions of the witnesses' affidavits at the petitioner's underlying criminal trial, the petitioner became aware of the conduct forming the basis of his freestanding due process claim. At that time, the petitioner could have moved for a mistrial pursuant to Practice Book § 42-43[9] or

moved for a new trial pursuant to Practice Book § 42-53.[10]

The petitioner also was capable of raising the freestanding due process claim on direct appeal. Although the defendant's claim is based on allegations against his first trial counsel that are similar to a typical claim of ineffective assistance of counsel, the petitioner alleged a freestanding due process claim. As our Supreme Court noted in *Taylor* v. *Commissioner of Correction*, supra, 324 Conn. 646, a typical claim of ineffective assistance of counsel can adequately be litigated only in a collateral proceeding because an analysis of counsel's conduct under *Strickland* necessarily requires an inquiry into the strategic considerations that caused the attorney to pursue a particular course of action, which is usually not reflected in the record of the underlying trial.

It is true that the petitioner's due process claim requires the court adjudicating it to consider Elder's conduct outside of the courtroom, a topic that typically could adequately be explored only in a collateral proceeding. In the present case, however, the state questioned Elder at the criminal trial about his fabrication of the affidavits. The petitioner, therefore, had a record of the conduct that formed the basis of the freestanding due process claim that he wanted to have reviewed on appeal. The freestanding due process claim in count one, therefore, was fully capable of being raised on direct appeal, if not at trial, and the petitioner was required to show good cause to overcome the procedural default of this claim.

We further agree with the habeas court that the petitioner failed to demonstrate good cause for procedurally defaulting his claim. The petitioner argues that the freestanding due process claim in count one is not susceptible to procedural default because the default derives from the ineffective assistance of Elder, which necessarily established a basis for cause and prejudice by virtue of the nature of the claim. As the court explained in *Johnson*, because a petitioner must meet the two-pronged test announced in *Strickland* to prevail on an *ineffective assistance of counsel claim*, he will "necessarily have established a basis for cause and will invariably have demonstrated prejudice" to overcome procedural default in so doing. (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 285 Conn. 570. Because the petitioner alleged *a freestanding due process claim*, the rationale of *Johnson* does not apply to the present case. To avoid procedurally defaulting count one of his amended petition, the petitioner was required to demonstrate good cause for his failure to raise this issue at trial or on direct appeal, when it first could have been raised. The petitioner failed to do so.

Instead of asserting that his trial and appellate coun-

sel, Sheehan and Kouros, were ineffective for failing to raise the due process claim at trial or on direct appeal, the petitioner claims Elder and McKay were ineffective for actions they took during pretrial proceedings and on collateral appeal during his first habeas case, respectively. This mere assertion of ineffectiveness by Elder and McKay is insufficient to show that some objective factor external to the defense impeded counsel's efforts to raise this issue at trial or on direct appeal when it was first capable of being raised. We, therefore, conclude that the court properly determined that count one of the amended petition was procedurally defaulted.

## II

The petitioner next claims that the court improperly concluded that an ineffective assistance of counsel claim regarding Elder could not be maintained because Elder did not represent him at the time that Elder fabricated the witnesses' affidavits or at the time that the petitioner rejected the state's plea offer in reliance on the affidavits. For the reasons that follow, we conclude that the habeas court improperly denied count three of the amended petition because it applied an unduly narrow legal view of the scope and duration of the attorney-client relationship, and, thus, the case should be remanded for a new trial on that count.

The following additional facts, as set forth in the habeas court's decision denying the petitioner's first petition for a writ of habeas corpus, are relevant to this claim. "The petitioner was arraigned . . . on March 2, 2004. At that proceeding, Elder appeared for the purpose of bond only. The case was transferred to Part A and continued to March 9, 2004. On March 9, 2004, when the case was called, Elder did not appear, nor did any other attorney for the petitioner. On March 10, 2004, the trial court, *Solomon*, *J.*, explained to the petitioner that Elder had been in a different court the day before and that it had ordered Elder to appear in court that day, March 10, 2004, at 10:00 a.m. The court explained that Elder's response to that message, through [his] secretary, was that he could not appear in the petitioner's matter on March 10 because he had a matter in Enfield, but that he would withdraw his bond only appearance and refund the petitioner's family's retainer. The court expressed its frustration with Elder's failure to appear, particularly in view of the serious nature of the charges.

"Later that day, the case was recalled, and Elder appeared. Elder explained that his appearance had been for bond only, he did not intend to file a full appearance in the case and that he would return the petitioner's family's retainer. The court ordered Elder out of the case and continued the matter for the petitioner to apply for a public defender or to obtain private counsel. At the next court appearance on March 29, 2004, public defender [Lorenzen] filed his appearance on the peti-

tioner's behalf." *McCarthy* v. *Warden*, supra, 2012 WL 1222247, *5.

In concluding that an ineffective assistance of counsel claim regarding the fabricated affidavits was not cognizable, the habeas court was required to consider the nature and duration of the attorney-client relationship between the petitioner and Elder. This question necessarily involves a consideration of the attorney-client relationship in general, as well as a factual inquiry into the events surrounding Elder's procurement of the falsified affidavits.[11] The United States Supreme Court has determined that the question of whether an attorney "represented" a defendant or served as counsel within the meaning of the sixth amendment presents a mixed question of fact and law over which an appellate court exercises plenary review. See *Cuyler* v. *Sullivan*, 446 U.S. 335, 341–42, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

At the outset, it is important to review some of the well established legal principles regarding the formation and termination of the attorney-client relationship and the fundamental obligations of a lawyer to a client and a former client. "An attorney-client relationship is established when the advice and assistance of the attorney is sought and received in matters pertinent to his profession. . . . With respect to termination of the relationship, our Supreme Court has stated: The formal termination of the relationship occurs when the attorney is discharged by the client, the matter for which the attorney was hired comes to a conclusion, or a court grants the attorney's motion to withdraw from the representation. A de facto termination occurs if the client takes a step that unequivocally indicates that he has ceased relying on his attorney's professional judgment in protecting his legal interests, such as hiring a second attorney to consider a possible malpractice claim or filing a grievance against the attorney." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *In re Ceana R.*, 177 Conn. App. 758, 769, 172 A.3d 870, cert. denied, 327 Conn. 991, 175 A.3d 1244 (2017).

For purposes of the sixth amendment and a petitioner's right to effective assistance of counsel, we agree with the United States Court of Appeals for the Seventh Circuit that an ineffective assistance of counsel claim may be cognizable with respect to the actions of an attorney who is not appearing in court or who is not counsel of record. See *Stoia* v. *United States*, 22 F.3d 766, 769 (7th Cir. 1994). As that court stated: "An attorney's constitutional ineffectiveness can manifest itself at trial *even though the attorney never appears in court.* For example, a defendant may hire more than one attorney to work on his criminal case, but only one of them may actually enter an appearance and represent him in court. . . . Also, an attorney hired to do 'behind the scenes' work may, through deficient performance,

negatively impact the trial counsel's ability to give the defendant an adequate defense." (Emphasis added.) Id.[12]

In determining the scope and duration of the attorney-client relationship in the present case, the habeas court narrowly focused on the courtroom component of Elder's representation of the petitioner. The cornerstone of the court's analysis was whether Elder had filed a written appearance with the court at the time he fabricated the affidavits. Indeed, the court began its analysis by emphasizing that "Elder appeared in the petitioner's case for bond purposes only." The court then declared that "Elder's *official representation* of the petitioner ended on March 10, 2004, when the court ordered him out of the case." (Emphasis added.) Finally, the court noted that "[t]he petitioner had not produced *any evidence* that [he] retained [Elder's] services after he withdrew from the case."[13] (Emphasis added.)

The habeas court's analysis suggests that it determined as irrelevant evidence that Elder was acting on the petitioner's behalf and for his benefit when he fabricated the affidavits. It is evident from the court's analysis in its memorandum of decision that it was most persuaded by the limited nature of the initial appearance filed by Elder and the subsequent withdrawal of that appearance. The court's reasoning fails to recognize that the sixth amendment right to effective assistance of counsel may extend, in the words of *Stoia*, to an attorney who performs "behind the scenes" work that, through deficient performance, negatively impacts the ability of the petitioner to assess the strength of the state's case and the decision to accept or reject a plea offer. See *Stoia* v. *United States*, supra, 22 F.3d 769.

The habeas court's use of the phrase "official representation" and its narrow focus on the nature of Elder's written appearance does not find support in our habeas jurisprudence or our rules of practice. The filing of a written appearance merely permits an attorney to appear in court and be heard on behalf of a party, entitles the attorney to confer with the prosecutor in a criminal case, and allows the attorney to receive copies of all notices required to be given by statute. Practice Book § 3-7. The filing of an appearance by one attorney does not mean that the petitioner is prevented from retaining other attorneys who will not appear in court on his behalf but may perform important out-of-court work on his behalf, including investigating potential eyewitnesses and obtaining written statements from them. Thus, even though Elder may not have been counsel of record after March 10, 2004, Elder may have continued to serve as the petitioner's counsel behind the scenes. Thus, the fact that Elder filed a limited appearance in court is not dispositive, but is merely one factor in determining the scope and duration of

the attorney-client relationship in the present case. See *State* v. *Murphy-Scullard*, Docket. No. A07-1319, 2008 WL 4470378, *4 (Minn. App. October 7, 2008) ("[f]ormally retaining an attorney is an important, although not dispositive, factor for the purposes of being deemed 'counsel' under the [s]ixth [a]mendment and its guarantee of effective assistance of counsel").

The habeas court's narrow focus on the status of Elder's "official representation" simply begs the question: If he no longer represented the petitioner, why would Elder continue to expend time and money investigating the eyewitnesses and then fabricate the affidavits, at great risk to his own personal and professional interests, if his representation of the petitioner had ended? It is difficult to imagine Elder engaging in such a frolic if he was not doing so as part of his continuing representation of the petitioner.

Indeed, the habeas court failed to consider other facts that suggest Elder continued to work on the petitioner's behalf after his written appearance was withdrawn on March 10, 2004. For example, the court did not consider, as was conceded by the state, that the witnesses' affidavits were prepared sometime between the bond hearing on March 2, 2004, and April 9, 2004, when Ferguson, acting within the scope of his employment with Elder, had the eyewitnesses sign their affidavits. It is clear that, sometime between April 9, 2004, when the affidavits were signed, and April 30, 2004, when Lorenzen used the fabricated affidavits during his cross-examination of Henry at the probable cause hearing, Elder gave Lorenzen a copy of his file containing the fabricated affidavits without alerting him or the petitioner to their fraudulent nature.

The habeas court presumably also failed to consider the fact that the petitioner was not appointed new counsel on March 10, 2004, when Elder last appeared in court on the petitioner's behalf. In fact, the court continued the matter for the petitioner to apply for a public defender or obtain new private counsel, leaving a period of time during which it is unclear whether and when the petitioner began to rely on the advice of an attorney other than Elder, thereby signaling a de facto termination of the attorney-client relationship. Finally, there is no indication that the habeas court considered whether Elder's representation was truly limited, given that he had been paid a retainer that appeared to cover professional services that extended beyond representing the petitioner at his arraignment.[14]

We agree with the petitioner that a sixth amendment ineffective assistance of counsel claim is not limited solely to those attorneys appearing in court on his behalf but may extend to cases in which a nonappearing attorney engages in deficient performance that adversely impacts his case at a later time. Thus, the habeas court should have considered the totality of the

circumstances regarding Elder's representation of the petitioner when analyzing the scope and duration of the attorney-client relationship in the present case.

It is true that courts in other jurisdictions have declined to extend the sixth amendment right to effective assistance of counsel to bad advice from an attorney if the petitioner has otherwise received adequate advice from another attorney acting on his behalf. These cases are, however, distinguishable from the present case.

In *United States* v. *Martini*, 31 F.3d 781, 782 (9th Cir. 1994), the petitioner received conflicting advice regarding a plea offer. The attorney who was originally retained to represent the petitioner had urged him to accept the offer. Id. Dissatisfied with this advice, the petitioner sought a second opinion from an attorney who was not familiar with the case and who, based on the petitioner's understated representations about the strength of the state's case, advised him that "the case might be 'triable,'" advice that the petitioner later claimed constituted ineffective assistance of counsel. Id. In concluding that the sixth amendment right to the effective assistance of the counsel did not extend to the second opinion that he had received, the court stated: "If a criminal defendant in fact receives effective assistance of counsel from the lawyer he has retained to meet the prosecution's case, he cannot later claim that he received ineffective assistance of counsel from another lawyer he chose to consult." Id., 782–83.

Following *Martini*, the Sixth Circuit Court of Appeals in *Santosuosso* v. *United States*, Docket No. 95-3146, 1996 WL 15631, *3 (6th Cir. 1996), concluded that an ineffective assistance of counsel claim did not extend to an attorney's advice where that attorney was not counsel of record and the defendant had received adequate advice from another attorney who was counsel of record. In *Santosuosso*, the petitioner was represented by an attorney who had arranged a plea bargain and advised that he accept it. Id., *1. On the same day that his attorney of record convinced him to accept the plea offer, the petitioner met with two other attorneys who urged him to reject the plea offer, fire his current attorneys, and hire them instead. Id. The petitioner did so and subsequently claimed that the advice from those attorneys to reject the offer constituted ineffective assistance of counsel. Id., *2. Citing *Martini*, the court concluded that the petitioner had received adequate advice from his attorney of record, which satisfied the sixth amendment right. Id., *3. The court noted that, "[t]he opposite conclusion, that whenever a criminal defendant acts upon what turns out to be bad advice he is entitled to relief for ineffective assistance, would leave a defendant free to reject a plea bargain, go to trial to test the waters, and then vacate the resulting sentence when the trial proves more costly than the

plea agreement." Id.

In a similar case, the United States District Court for the Western District of Michigan concluded in *United States* v. *Logan*, 257 F. Supp. 3d 880, 890–91 (W. D. Mich. 2017), aff'd, 910 F.3d 864 (6th Cir. 2018), cert. denied, U.S. , 139 S. Ct. 1589, 203 L. Ed. 2d 745 (2019), that the sixth amendment right to effective assistance of counsel does not guarantee the right to effective assistance of two attorneys in a case where the attorneys have given conflicting advice. In *Logan*, the petitioner was appointed counsel by the court, but his family had also retained a different attorney to represent him. Id., 882–83. When the court disallowed the appointed lawyer to withdraw and the retained attorney to enter his appearance based on the tardy nature of the request, the petitioner continued to seek advice from the attorney he had retained to his detriment. Id., 883. The court concluded that the retained attorney was acting within the scope of the attorney-client relationship when he gave the petitioner poor advice, but this poor advice did not negate the adequate advice and effective representation the petitioner had received from appointed counsel. Id., 889.

The present case does not turn on any poor advice that he allegedly received from Elder. The petitioner also does not assert that his trial attorneys, who represented him at the time he received the plea offer, engaged in deficient performance in rendering him advice regarding whether to accept the plea offer. Finally, the present case, unlike *Martini*, does not involve a petitioner who received conflicting advice from various counsel and later claimed that one attorney's advice was deficient while the other attorney's advice was not.

Instead, under the unusual circumstances of this case, the petitioner argues that his decision to reject the state's plea offer was negatively impacted by the deficient performance of Elder, who, acting within the scope of his representation of the petitioner while investigating the state's case, decided to fabricate evidence by putting words into the mouths of the state's witnesses. This distinction renders *Martini* and its progeny inapposite.

Instead, we are guided by those courts, in addition to *Stoia*, that have concluded that the sixth amendment right to effective assistance of counsel, in certain circumstances, may extend to the performance of an attorney who did not directly represent a petitioner in court, but whose conduct negatively impacted the petitioner's representation at a later time. In *State* v. *Murphy-Scullard*, supra, 2008 WL 4470378, *1, the petitioner was represented at her guilty plea hearing by two attorneys of record from the public defender's office. The petitioner's case was first being handled by Attorney Sara Sjoholm, but in anticipation of passing the case

to a second attorney, Kelly Madden, both were present for the guilty plea. Id. During the hearing, only Sjoholm discussed the plea agreement with the petitioner and addressed the court. Id. There was, however, evidence that Madden had discussed the decision to plead guilty with the petitioner before the date of the hearing. Id., *4. The court concluded that, because Madden was one of the petitioner's attorneys of record and had "some minimal involvement in counseling" the petitioner regarding the plea offer, the sixth amendment protections extended to her conduct. Id.

In *United States* v. *Chezan*, Docket No. 10 CR 905-1, 2014 WL 8382792, *16-17 (N.D. Ill. October 14, 2014) (report and recommendation adopted by federal District Court), United States Magistrate Judge Sheila Finnegan considered whether the sixth amendment right to effective assistance of counsel extended to advice given to the petitioner by an immigration attorney regarding the immigration consequences of his pending criminal matter, although the immigration attorney never appeared in the criminal court. Importantly, the petitioner's criminal attorney relied on the advice from the immigration attorney when advising the petitioner on how to proceed with his criminal case. Id., *13. The court found that it was undisputed that the immigration attorney was retained to provide and did provide legal advice to the petitioner and, thus, concluded that there was "no question that the [s]ixth [a]mendment applies to this type of representation." Id., *17. The circumstances in the present case are more like those faced by the petitioners in *Chezan* and *Murphy-Scullard*, in which counsel, acting within the scope of the attorney-client relationship, influenced the advice of a subsequent counsel in a way that prejudiced the petitioners.

We also are not persuaded by the respondent's attempt to distinguish *Stoia* v. *United States*, supra, 22 F.3d 766, from the present case by arguing that there is "no evidence that Elder 'called the shots' or directly controlled the petitioner's defense from behind the scenes." *Stoia* imposes no such test. Although the court in *Stoia* employed such language in assessing the level of involvement of the attorney suffering from an improper conflict of interest in that case; id., 769–70; *Stoia* does not suggest that a petitioner must demonstrate that the nonappearing counsel must have "called the shots" in the case. Instead, *Stoia* simply recognizes that, for the purpose of determining whether counsel is representing a petitioner, the sixth amendment may extend to *nonappearing* counsel who "negatively impact the trial counsel's ability to give the defendant an adequate defense."

We simply are unconvinced by the respondent's assertion that the petitioner's sixth amendment right to effective assistance of counsel is so narrow so as to leave unprotected a defendant whose prior counsel

engages in deficient performance, unbeknownst to subsequent counsel, that influences the conduct of other attorneys in the case or the defendant's critical decision on whether to accept a plea. Elder's alleged conduct may well have negatively impacted the propriety of the advice given by his subsequent counsel regarding the plea offer.[15] Moreover, contrary to the state's assertion, there is little dispute that Elder impacted the petitioner's defense from behind the scenes when he, in the course of investigating the state's case, fabricated witnesses' affidavits without informing the petitioner or his new attorneys, thereby influencing every subsequent decision made on the basis of those fabricated affidavits.

In sum, by unduly focusing on the limited nature of Elder's court appearance and his subsequent withdrawal of that appearance, the habeas court precluded the possibility that Elder continued to represent the petitioner for purposes of the sixth amendment when he fabricated the affidavits. The existence of those fabricated affidavits allegedly played a crucial role in the petitioner's decision to reject a plea offer to manslaughter in the first degree with a firearm that would have resulted in his serving a ten to fifteen year period of incarceration. Instead, the defendant rejected the plea offer, was subsequently convicted of murder, and is now serving a sentence of fifty years of incarceration.

In remanding this case for a new trial on the third count of the amended petition, we do not mean to suggest that the habeas court is required to reach the legal conclusion that Elder was representing the petitioner for purposes of the sixth amendment when he fabricated the affidavits or that the petitioner was necessarily prejudiced by this conduct. Instead, we simply conclude that the petitioner is entitled to a determination by the habeas court that is not limited to consideration of the status of Elder's formal appearance in court during the relevant period.

The judgment is reversed with respect to the habeas court's denial of count three of the operative amended habeas petition, and the case is remanded for a new trial on that count; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Sheehan and Kouros represented the petitioner at trial and in his subsequent direct appeal.

[2] It is not apparent from this record when Elder created the affidavits or when Lorenzen took custody of the file containing them. It is evident, however, that the affidavits were created before April 9, 2004, when they were signed by both witnesses and that Lorenzen was in possession of them on April 30, 2004, because he impeached Henry with his affidavit during cross-examination at the probable cause hearing on that date. The file containing the affidavits, therefore, must have been passed to Lorenzen between April 9 and April 30, 2004.

[3] In his first petition for a writ of habeas corpus, the petitioner claimed that he was deprived of the effective assistance of counsel by his trial attorneys, Sheehan and Kouros, because they: "(1) failed to object to the testimony of [Ware], a late disclosed state's witness; (2) failed to request a

continuance to investigate Ware's testimony; (3) failed to move for a mistrial subsequent to Ware's testimony; (4) failed to object to the testimony of [Elder], the petitioner's bond counsel or cross-examine him; (5) failed to file a motion for a mistrial after Elder testified; (6) failed to file a notice of alibi or to subpoena alibi witnesses; (7) failed to investigate the evidence or state's witnesses prior to trial; (8) misrepresented the state's plea offer; (9) failed to adequately present evidence of third-party culpability, and in particular, that [Odum] was in possession of a firearm of the same caliber as the murder weapon; (10) failed to cross-examine Odum as to his possession of the gun; and (11) failed to request a jury charge on third-party culpability." *McCarthy* v. *Warden*, supra, 2012 WL 1222247, *2.

[4] The habeas court denied counts two and four of the amended petition, the so-called "habeas on a habeas" counts; see *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 550, 153 A.3d 1233 (2017); on the ground that the petitioner failed to produce evidence sufficient to overcome the strong presumption that McKay's decision not to raise in the petitioner's first habeas action the claims now asserted in counts one and three fell within the wide range of competence required by the sixth amendment. See *Strickland* v. *Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). On appeal, the petitioner has failed to raise and separately brief any claim challenging the habeas court's denial of counts two and four. Although he does address McKay's alleged deficient performance in his argument that he satisfies the cause and prejudice standard necessary to avoid procedural default with respect to count one, we conclude that such briefing, untethered to any specific claim directed at the court's resolution of count two, is inadequate to avoid abandoning a challenge to the denial of count two. See *Artiaco* v. *Commissioner of Correction*, 180 Conn. App. 243, 248–49, 182 A.3d 1208, cert. denied, 328 Conn. 931, 184 A.3d 758 (2018).

[5] Moreover, during the habeas trial, the respondent did not assert, as he did during oral argument before this court, that he had raised procedural default in his return with respect to count three. The habeas court, in reviewing the pleadings with counsel prior to trial, expressly stated that it viewed the respondent's allegation of procedural default as directed only to count one, and counsel for the respondent made no attempt to clarify or assert otherwise. Moreover, during posttrial arguments, the respondent reiterated that he was "still pursuing the procedural default in count 1."

[6] Because the habeas court concluded that Elder was not representing the petitioner within the meaning of the sixth amendment when he fabricated the affidavits, it did not reach the question of whether Elder's performance fell below acceptable standards or if the petitioner was prejudiced by Elder's alleged deficient performance.

[7] "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the [s]ixth [a]mendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland* v. *Washington*, supra, 466 U.S. 687.

[8] In habeas corpus proceedings, courts often describe constitutional claims that are not tethered to a petitioner's sixth amendment right to counsel as "freestanding." See, e.g., *Moye* v. *Commissioner of Correction*, 316 Conn. 779, 785–86, 114 A.3d 925, 928 (2015).

[9] Practice Book § 42-43 provides in relevant part: "Upon motion of a defendant, the judicial authority may declare a mistrial at any time during the trial if there occurs during the trial an error or legal defect in the proceedings, or any conduct inside or outside the courtroom which results in substantial and irreparable prejudice to the defendant's case. . . ."

[10] Practice Book § 42-53 (a) provides: "Upon motion of the defendant, the judicial authority may grant a new trial if it is required in the interests of justice. Unless the defendant's noncompliance with these rules or with other requirements of law bars his or her asserting the error, the judicial authority shall grant the motion: (1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or (2) For any other error which the defendant can establish was materially injurious to him or her."

[11] We recognize that the petitioner did not call Elder as a witness at the second habeas trial. Because we conclude that the habeas court applied an

incorrect legal standard in concluding that Elder was not the petitioner's counsel for purposes of the sixth amendment, that failure is not fatal to the petitioner's claim on appeal.

[12] In *Stoia*, the petitioner brought an ineffective assistance of counsel claim regarding one of his several attorneys, Raymond Takiff, who suffered from an improper conflict of interest but who had never appeared in court on his behalf. *Stoia* v. *United States*, supra, 22 F.3d 767–68. The court concluded that the petitioner's sixth amendment right to counsel was implicated, despite the fact that Takiff never appeared in court, because his conflict of interest negatively impacted the performance of other counsel and his defense as a whole. Id., 773.

[13] This statement by the habeas court is incorrect for at least two reasons. First, if Elder's representation of the petitioner continued beyond the end of Elder's in-court participation, then there would have been no need for the petitioner to again retain Elder. Second, the petitioner did produce evidence that Elder continued to represent him after March 10, 2004. That evidence included the undisputed fact that Elder and his investigator continued to work on the petitioner's case after that date. From that fact, a court would be entitled to infer that the attorney-client relationship continued unabated until sometime later.

[14] If the retainer covered only professional services performed by Elder during the petitioner's arraignment, then there would have been no need for Elder to represent to the court that he intended on returning the retainer to the petitioner's family.

[15] If Sheehan and Kouros knew or should have known that the affidavits were fabricated and subject to attack by the state, they arguably would have had a duty to their client to investigate the procurement of the affidavits in order to assess and provide advice to the petitioner regarding the strength of the state's case. Under those circumstances, Elder's deficient performance would have been ameliorated or cured by the constitutionally effective representation of subsequent counsel. The habeas court did not reach this question because it concluded that Elder, for purposes of the sixth amendment, simply did not represent the petitioner at the time he fabricated the affidavits. If, on remand, the habeas court concludes that Elder was representing the petitioner for purposes of the sixth amendment during the relevant period, then it would need to reach the question of whether the petitioner, or Sheehan and Kouros, reasonably relied on the accuracy of the affidavits without further investigation.

———————————————